**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JULIUS H. SCHOEPS, BRITT-MARIE ENHOERNING, and FLORENCE VON KESSELSTATT, | ) ) ) | |
| | ) | Case No. 1:22-cv-07013 |
| Plaintiffs, | ) | |
| | ) | Honorable Judge Jeremy C. Daniel |
| v. | ) | |
| | ) | |
| SOMPO HOLDINGS, INC., SOMPO INTERNATIONAL HOLDINGS LTD., SOMPO FINE ART FOUNDATION, and SOMPO JAPAN INSURANCE INC., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL
PROCEDURE 12(b)(1) & 12(b)(2) AND DOCTRINE OF *FORUM NON CONVENIENS***

Daniel T. Graham (ARDC No. 6203811)
Priscilla Singer (ARDC No. 6307021)
Jeffrey M. Sniadanko (ARDC No. 6331532)
Melissa E. Garcia (ARDC No. 6342000)
CLARK HILL PLC
130 East Randolph Street, Suite 3900
Chicago, Illinois 60601
Telephone: (312) 989-5900
dgraham@clarkhill.com
psinger@clarkhill.com
jsniadanko@clarkhill.com
mgarcia@clarkhill.com

Ronald A. King (N. D. Ill. No. 90784709)
CLARK HILL PLC
215 South Washington Square, Ste. 200
Lansing, MI 48933
Telephone: (517) 318-3100
rking@clarkhill.com

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... v

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

    I.      THE PARTIES ............................................................................................................ 2

    II.     PLAINTIFFS' CLAIMS .......................................................................................... 4

APPLICABLE LEGAL STANDARDS ....................................................................................... 5

    I.      CHALLENGE TO SUBJECT MATTER JURISDICTION .................................... 5

    II.     CHALLENGE TO SPECIFIC PERSONAL JURISDICTION ............................... 6

    III.    CHALLENGE BASED ON THE DOCTRINE OF *FORUM NON CONVENIENS* ......................................................................................................... 6

ARGUMENT ................................................................................................................................. 7

    I.      THIS COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(1) BECAUSE PLAINTIFFS LACK STANDING ................................................................................................................. 7

        A.     Plaintiffs Fail to Plead Representative Standing To Sue. ............................ 7

        B.     Plaintiffs' Invitation to Create Causes of Action Under "Federal Common Law" or "Plenary Equitable Authority Under Article III" to Confer Subject Matter Jurisdiction Should be Rejected. ................................................................................... 11

    II.     THIS COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION OVER DEFENDANTS ............................................................ 15

        A.     The Court Lacks Specific Personal Jurisdiction Over Defendants Because Their Alleged Suit-Related Conduct Does Not Create a Substantial Connection With Illinois .......................... 16

            1.     Plaintiffs Do Not Allege Suit-Related Contacts Between Defendants and Illinois. ................................. 18

      a.    Plaintiffs' Conversion Claims do not arise from Defendants' alleged Illinois-related or Illinois-directed activities.................................................18

      b.    Plaintiffs' Exploitation Claims do not arise from any of Defendants' Illinois-related or Illinois-directed activities.................................................22

2.    The Court Lacks Specific Personal Jurisdiction Over Defendants Because their Conduct Is Not Targeted to Illinois. ........................................................25

      a.    The sale of insurance in Illinois by entities other than the Defendants has no connection to Plaintiffs' claims and does not subject the Defendants to specific personal jurisdiction. ....................25

      b.    Defendants' general advertisements, social media and websites do not subject Defendants to specific personal jurisdiction. ....................26

      c.    Use of the *Sunflowers* image in advertisements or websites to reflect a "core identity" and "brand" does not confer specific personal jurisdiction in Illinois. ..........................28

            (i)    Plaintiffs' claims relate to the physical Painting.....................................28

            (ii)    The Sompo Entities' alleged use of the Sunflowers image is not suit-related or Illinois-focused activity. .......................29

      d.    The isolated 2001 Exhibition of *Sunflowers* at the Art Institute of Chicago is not sufficiently linked to Plaintiffs' claims to subject Defendants to specific personal jurisdiction. ........................................................32

3.    Illinois' Exercise of Personal Jurisdiction Over Defendants Would Not Comport with Traditional Notions of Fair Play and Substantial Justice................................35

B.    Illinois' Long-Arm Statute Does Not Confer Personal Jurisdiction Over Defendants........................................................37

1.    Defendants Are Not Subject to Personal Jurisdiction Under 735 ILCS § 5/2-209(a)(2). ..................................37

274293100

2.      Defendants Are Not Subject to Personal Jurisdiction Under 735 ILCS § 5/2-209(a)(1). ..................................................38

3.      Defendants Are Not Subject to Personal Jurisdiction Under 735 ILCS § 5/2-209(a)(4). ..................................................39

III.      ALTERNATIVELY, THE COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS* ................................................................39

A.      Japan Is An Available And Adequate Forum. ...........................................41

B.      The Private Interest Factors Compel Dismissal........................................43

C.      The Public Interest Factors Compel Dismissal........................................44

CONCLUSION....................................................................................................45

274293100

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Abad v. Bayer Corp.*,
  563 F.3d 663 (7th Cir. 2009) ................................................................ 42

*Accord Wach v. Byrne, Goldenberg & Hamilton, PLLC*,
  910 F. Supp. 2d 162 (Dist. D.C. 2012) ................................................. 10

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014) ................................................ 6, 15, 17, 28

*Amling v. Harrow Indus. LLC*,
  943 F.3d 373 (7th Cir. 2019) ................................................................ 40

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
  572 F.3d 440 (7th Cir. 2009) ............................................................... 5, 7

*Baker Dental Corp. v. Aurex Dental Inc.*,
  2014 WL 4414520 (N.D. Ill. Sept. 5, 2014) ......................................... 15

*Bakopoulos v. Mars Petcare US, Inc.*,
  20 CV 6841, 2021 WL 2915215 (N.D. Ill. July 12, 2021) ................... 20

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
  805 F.2d 663 (7th Cir. 1986) ................................................................ 30

*be2 LLC v. Ivanov*,
  642 F.3d 555 (7th Cir. 2011) ................................................................ 35

*Bedin v. Nw. Mem'l Hosp.*,
  2021 IL App (1st) 190723, 187 N.E.3d 739,
  *appeal denied*, 184 N.E.3d 984 (Ill. 2022) ......................................... 25

*Benson v. Fannie May Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) ................................................................ 20

*Bhutani v. Courts of Northbrook Condo. Ass'n*,
  2017 IL App (1st) 162378-U, 2017 WL 3995738 .............................. 18

*Bogie v. Rosenberg*,
  705 F.3d 603 (7th Cir. 2013) ................................................................ 24

*Bonilla v. Ancestry.com Operations Inc.*,
  574 F. Supp. 3d 582 (N.D. Ill. 2021) ................................................... 27

v

*Bozek v. Bank of Am., N.A.*,
 2021 IL App (1st) 191978, 191 N.E.3d 709 ....................................................... 23

*Bridgeman Art Library, Ltd. v. Corel Corp.*,
 36 F. Supp. 2d 191 (S.D.N.Y. 1999) ......................................................... 31, 38

*Bristol-Myers Squibb Co. v. Sup. Court of Calif., San Francisco Cnty.*,
 582 U.S. 255 (2017) ......................................................................................... 16

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ................................ 35

*Calder v. Jones*,
 465 U.S. 783 (1984) ......................................................................................... 17

*Chicago Title & Trust Co. v. Levine*,
 333 Ill. App. 3d 420, 789 N.E.2d 769 (2002) ................................................. 23

*Cirrincione v. Johnson*,
 184 Ill.2d 109, 703 N.E.2d 67 (Ill. 1998) ....................................................... 19

*Cleary v. Philip Morris Inc.*,
 656 F.3d 511 (7th Cir. 2011) ........................................................................... 20

*Clerides v. Boeing Co.*,
 534 F.3d 623 (7th Cir. 2008) ..................................................................... 39, 40

*Comitz v. Rife*,
 597 F. Supp. 3d 1235 (N.D. Ill. 2022) ............................................................ 16

*Cort v. Ash*,
 422 U.S. 66, 95 S. Ct. 2080 (1975) ................................................................. 15

*Curry v. Revolution Laboratories, LLC*,
 949 F.3d 385 (7th Cir. 2020) ........................................................................... 26

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) .................................................................................... 15, 26

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
 539 U.S. 23 (2003) ...................................................................................... 31, 32

*Deb v. SIRVA, Inc.*,
 832 F.3d 800 (7th Cir. 2016) ........................................................................... 42

*Dinerstein v. Google, LLC*,
 484 F. Supp. 3d 561 (N.D. Ill. 2020),
 *aff'd as modified*, 2023 WL 4446475 (7th Cir. July 11, 2023) .................. 20, 30

274293100

*Dunbar v. Seger-Thomschitz,*
  638 F. Supp. 2d 659 (E.D. La. 2009) ................................................................................ 15

*Eco Pro Painting, LLC v. Sherwin-Williams Co.,*
  807 F. Supp. 2d 732 (N.D. Ill. 2011) ....................................................................... 27, 28, 31

*Eidmann v. Walgreen Co.,*
  522 F. Supp. 3d 634 (N.D. Cal. 2021) ............................................................................... 32

*Eli Barzilai, et. al. v. Israel Museum,*
  No. 153086/2022, 2022 WL 16856131 (N.Y. Sup. Ct. Nov. 10, 2022) ......................... 32, 33

*Erie R. Co. v. Tompkins,*
  304 U.S. 64, 58 S. Ct. 817 (1938) ...................................................................................... 12

*Family & Children's Center, Inc. v. School City of Mishawaka,*
  13 F.3d 1052 (7th Cir. 1994) .............................................................................................. 7

*Fed. Trade Comm'n v. Credit Bureau Ctr., LLC,*
  937 F.3d 764 (7th Cir. 2019) ....................................................................................... 13, 14

*Felland v. Clifton,*
  682 F.3d 665 (7th Cir. 2012 .............................................................................................. 35

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court,*
  141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021) ....................................................................... 26

*Forrest v. Universal Sav. Bank, F.A.,*
  507 F.3d 540 (7th Cir. 2007) ............................................................................................. 24

*GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.,*
  64 F. Supp. 3d 1179 (N.D. Ill. 2014) ......................................................................... passim

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  564 U.S. 915 (2011) .......................................................................................................... 16

*Graff v. Leslie Hindman Auctioneers, Inc.,*
  342 F. Supp. 3d 819 (N.D. Ill. 2018),
  *vacated on other grounds,* 2019 WL 13196397 (N.D. Ill. Feb. 12, 2019) ............... 21, 33, 34

*Gubala v. Time Warner Cable, Inc.,*
  846 F.3d 909 (7th Cir. 2017) ............................................................................................. 13

*Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. Partnership,*
  807 F. Supp. 470 (N.D. Ill. 1992) ...................................................................................... 38

*Hot Wax, Inc. v. Stone Soap, Co.,*
  No. 97 C 6878, 1999 WL 183776 (N.D. Ill. Mar. 25, 1999) ..................................... 27, 36, 37

274293100

*Huber Pontiac, Inc. v. Wells*,
   59 Ill. App. 3d 14, 375 N.E.2d 149 (4th Dist. 1978) ........................................................ 18

*Hunter v. PepsiCo, Inc.*,
   631 Fed.Appx. 445 (7th Cir. 2015) ............................................................................... passim

*Imamura v. Gen. Elec. Co.*,
   371 F. Supp. 3d 1 (D. Mass. 2019), *aff'd*, 957 F.3d 98 (1st Cir. 2020) ................................ 42

*In re Factor VIII or IX Concentrate Blood Products Litig.*,
   484 F.3d 951 (7th Cir. 2007) ....................................................................................... 44

*In re Karavidas*,
   2013 IL 115767, 999 N.E.2d 296 (Ill. 2013) ........................................................ 19, 20, 21

*Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*,
   29 F.4th 351 (7th Cir. 2022) .................................................................................. 42, 43, 44

*Int'l Shoe Co. v. State of Wash., Office of Unempl. Comp.*,
   326 U.S. 310 (1945) ................................................................................................ 15, 26, 28

*Jensen v. Chicago & W. Indiana R. Co.*,
   94 Ill. App. 3d 915, 419 N.E.2d 578 (1st Dist. 1981) ..................................................... 19

*Johnson v. Johnson & Bell, Ltd.*,
   2014 IL App (1st) 122677, 7 N.E.3d 52 ..................................................................... 25

*Kalata v. Healy*,
   312 Ill. App. 3d 761, 728 N.E.2d 648 (1st Dist. 2000) ................................................ 39

*Kamel v. Hill–Rom Co.*,
   108 F.3d 799 (7th Cir. 1997) ...................................................................................... 6

*Kansas v. Nebraska*,
   574 U.S. 445 (2015) .................................................................................................. 14

*King v. PeopleNet Corp.*,
   21 CV 2774, 2021 WL 5006692 (N.D. Ill. Oct. 28, 2021) ............................................ 27

*Kipp v. Ski Ent. Corp. of Wisconsin Inc.*,
   783 F.3d 695 (7th Cir. 2015) ...................................................................................... 16

*Kukovec v. Estee Lauder Companies, Inc.*,
   22 CV 1988, 2022 WL 16744196 (N.D. Ill. Nov. 7, 2022) ........................................... 27

*Kurtz v. Hubbard*,
   2012 IL App (1st) 111360, 973 N.E.2d 924 ................................................................ 25

viii

*Labtest Int'l, Inc. v. Ctr. Testing Int'l Corp.*,
   766 F. Supp. 2d 854 (N.D. Ill. 2011) ................................................................. 36

*Leibovitch v. Islamic Republic of Iran*,
   188 F. Supp. 3d 734 (N.D. Ill. 2016), *aff'd*, 852 F.3d 687 (7th Cir. 2017) .......................... 15

*Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*,
   938 F.3d 874 (7th Cir. 2019) ......................................................................... 16

*Lockman Found. v. Evangelical All. Mission*,
   930 F.2d 764 (9th Cir. 1991) ......................................................................... 43

*Loman v. Freeman*,
   229 Ill.2d 104, 890 N.E.2d 446 (Ill. 2008) ................................................... 19, 21

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................ 5, 30

*Matlin v. Spin Master Corp.*,
   921 F.3d 701 (7th Cir. 2019) ................................................................... 17, 21

*McDonald's Corp. v. Am. Motorists Ins. Co.*,
   321 Ill. App. 3d 972, 748 N.E.2d 771 (2d Dist. 2001) ...................................... 24, 25

*McGill v. Lazzaro*,
   92 Ill. App. 3d 393, 416 N.E.2d 29 (1st Dist. 1980) ............................................. 8

*Meghrig v. KFC W., Inc.*,
   516 U.S. 479, 116 S. Ct. 1251 (1996) ........................................................ 13, 14

*Midwest Glass Co. v. Stanford Dev. Co.*,
   34 Ill. App. 3d 130, 339 N.E.2d 274 (1st Dist. 1975) ......................................... 24

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*,
   623 F.3d 440 (7th Cir. 2010) ......................................................................... 17

*Moore v. Brandenberg*,
   248 Ill. 232 (1910) ...................................................................................... 10

*Mulligan v. QVC, Inc.*,
   382 Ill. App. 3d 620, 888 N.E.2d 1190 (1st Dist. 2008) ....................................... 20

*Myers v. Heritage Enters., Inc.*,
   332 Ill.App.3d 514, 773 N.E.2d 767 (4th Dist. 2002) ........................................... 8

*N. Grain Mktg., LLC v. Greving*,
   743 F.3d 487 (7th Cir. 2014) .......................................................................... 6

ix

*O'Donnell v. Elgin, J. & E. Ry. Co.*,
193 F.2d 348 (7th Cir. 1951) ................................................................. 8

*Olson v. Olson*,
168 Ill. App. 358, 1912 WL 2052 (2d Dist. 1912) ................................. 19

*Orkin v. Taylor*,
487 F.3d 734 (9th Cir. 2007) ................................................................. 15

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) .......................................................................... 42, 43

*RAR, Inc. v. Turner Diesel, Ltd.*,
107 F.3d 1272 (7th Cir. 1997) ............................................................... 17

*Relf v. Shatayeva*,
2013 IL 114925, 998 N.E.2d 18 (Ill. 2013) ......................................... 8, 9

*Rodriguez v. Fed. Deposit Ins. Corp.*,
140 S. Ct. 713 (2020) ............................................................................. 12

*Rogers v. City of Hobart, Indiana*,
996 F.3d 812 (7th Cir. 2021) ................................................................. 35

*Roy Zenere Trucking & Excavating, Inc. v. Build Tech, Inc.*,
2016 IL App (3d) 140946, 65 N.E.3d 340 .......................................... 23, 24

*Santora v. Starwood Hotel & Resorts Worldwide, Inc.*,
580 F. Supp. 2d 694 (N.D. Ill. 2008) .................................................... 36

*Scarpelli v. McDermott Will & Emery LLP*,
2018 IL App (1st) 170874, 117 N.E.3d 238 ......................................... 25

*Schiller & Schmidt, Inc. v. Nordisco Corp.*,
969 F.2d 410 (7th Cir. 1992) ................................................................. 30

*Schoeps v. Andrew Lloyd Webber Foundation*,
66 A.D.3d 137 (N.Y. 2009) .............................................................. 10, 11

*Schoeps v. The Museum of Modern Art*,
594 F.Supp.2d 461 (S.D.N.Y. 2009) ..................................................... 11

Sears, Roebuck & Co. v. Stiffel Co.,
376 U.S. 225, 84 S.Ct. 784 (1964) ....................................................... 32

*Shanahan v. Nat'l Auto Prot. Corp.*,
1:19-CV-03788, 2020 WL 3058088 (N.D. Ill. June 9, 2020) ............... 6

x

*Sifuna v. Accred. Coun. of Pharmacy Educ.*,
    17 CV 0028, 2017 WL 5891224 (N.D. Ill. Nov. 28, 2017)........................................ 5, 15, 25

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ...................................................................... 5, 23, 30

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007)........................................ 40

*Sosa v. Alvarez-Machain*,
    542 U.S. 692, 124 S. Ct. 2739 (2004)................................................................ 12

*Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*,
    589 F.3d 417 (7th Cir. 2009) ...................................................................... 39, 41

*Sunny Handicraft (H.K.) Ltd. v. Edwards*,
    No. 16 C 4025, 2017 WL 1049842 (N.D. Ill. Mar. 20, 2017)............................. 34

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ...................................................................... 17, 34

*Tavel v. Riddle*,
    20 CV 6805, 2021 WL 1121120 (N.D. Ill. Mar. 24, 2021)................................... 20

*Taylor v. Meirick*,
    712 F.2d 1112 (7th Cir. 1983) ...................................................................... 22, 23

*Telemedicine Sols. LLC v. WoundRight Techs., LLC*,
    27 F. Supp. 3d 883 (N.D. Ill. 2014).................................................................... 17

*Texas Indus., Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630, 101 S. Ct. 2061 (1981)............................................................. 12, 13

*Thrasher-Lyon v. Illinois Farmers Ins. Co.*,
    861 F. Supp. 2d 898 (N.D. Ill. 2012) ............................................................. 11, 30

*TY, Inc. v. Sullivan*,
    01 C 1604, 2002 WL 500663 (N.D. Ill. Mar. 12, 2002)....................................... 37

*U.S.O. Corp. v. Mizuho Holding Co.*,
    06 C 0459, 2007 WL 2893628 (N.D. Ill. Sept. 27, 2007) ................................... 42

*U.S.O. Corp. v. Mizuho Holding Co.*,
    547 F.3d 749 (7th Cir. 2008) ................................................................. 41, 42, 43

*United States v. Park*,
    389 F. Supp. 3d 561 (N.D. Ill. 2019) ............................................................. 12, 13

xi

*Walden v. Fiore,*
    571 U.S. 277 (2014)................................................................................... 2, 16, 17

*Will v. Northwestern Univ.,*
    378 Ill.App.3d 280, 881 N.E.2d 481 (1st Dist. 2007)............................................ 8

*Wilson v. Sunstrand Corp.,*
    2002 WL 99745 (N.D. Ill. Jan. 25, 2002)......................................................... 10

*Zuckerman v. Metro. Museum of Art,*
    928 F.3d 186 (2d Cir. 2019) ........................................................................ 14

**<u>Statutes</u>**

15 U.S.C. § 45.................................................................................................... 14, 25

17 U.S.C. § 102........................................................................................................ 30

17 U.S.C. § 102(a) ................................................................................................... 30

17 U.S.C. § 106........................................................................................................ 30

17 U.S.C. § 202................................................................................................... 29, 30

18 U.S.C. § 1001...................................................................................................... 25

18 U.S.C. § 1341...................................................................................................... 25

18 U.S.C. § 1343...................................................................................................... 25

18 U.S.C. § 2314...................................................................................................... 25

22 U.S.C. § 2459...................................................................................................... 32

44 U.S.C. § 1507...................................................................................................... 32

735 ILCS § 5/19-104 ............................................................................................... 18

735 ILCS § 5/2-209(a)(1) .................................................................................. 38, 39

735 ILCS § 5/2-209(a)(2) .................................................................................. 37, 38

735 ILCS § 5/2-209(a)(4) ....................................................................................... 39

755 ILCS § 5/1-1 (Illinois Probate Act of 1975) ................................................. 8, 10

755 ILCS § 5/22-3 .................................................................................................... 8

755 ILCS § 5/27-6 .................................................................................................... 8

274293100

815 ILCS § 505/1, *et seq*. (Illinois' Consumer Fraud and Deceptive Business Practices Act) .................................................................................................................. 11

Holocaust Expropriated Art Recovery Act of 2016,
PL 114-308, December 16, 2016, 130 Stat 1524................................................. 13, 14, 15, 24

## **Other Authorities**

2 Sedgwick on Damages, 8th Ed., Sec. 492................................................................................ 19

7 Patry on Copyright § 23.21 .................................................................................................... 30

*Berne Convention for the Protection of Literary and Artistic Works*,
https://www.wipo.int/wipolex/en/text/283698 .............................................................. 30

https://commons.wikimedia.org/wiki/File:World_copyright_terms.svg ..................................... 30

https://en.wikipedia.org/wiki/List_of_countries%27_copyright_lengths ................................... 30

Prague Holocaust Era Assets Conference, *Terezín Declaration* (June 30, 2009),
https://www.state.gov/prague-holocaust-era-assets-conference-terezin-declaration ........... 15

Restatement (Second) of Torts (1965) § 322, Comment "c." ...................................................... 22

*Washington Conference Principles on Nazi-Confiscated Art* (December 3, 1998),
https://www.state.gov/washington-conference-principles-on-nazi-confiscated-art/ ............. 15

*WIPO Guide to the Berne Convention* (1978),
https://www.wipo.int/edocs /pubdocs/en/copyright/615/wipo_pub_615.pdf....................... 30

274293100

Defendants Sompo Holdings, Inc. ("Sompo Holdings"), Sompo Japan Insurance Inc. ("Sompo Japan"), Sompo International Holdings Ltd. ("Sompo Bermuda"), and the Sompo Fine Art Foundation (the "Art Foundation")[1] (collectively, the "Sompo Entities" or "Defendants"), through their undersigned counsel, and in support of their Motion to Dismiss the *First Amended Complaint for Restitution and Unjust Enrichment* (D.E.39) (the "Complaint") of Plaintiffs Julius H. Schoeps ("Schoeps"), Britt-Marie Enhoerning ("Enhoerning") and Florence von Kesselstatt ("Kesselstatt") (collectively, "Plaintiffs"), brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(2) and the doctrine of *forum non conveniens*, state as follows:

## PRELIMINARY STATEMENT

The Complaint is subject to dismissal for three independent reasons.

*First*, Plaintiffs lack standing. While Plaintiffs purport to sue in their capacity as "representatives" of heirs of German citizens Paul von Mendelssohn-Bartholdy ("Mendelssohn-Bartholdy") (who died in Germany in 1935), Mendelssohn-Bartholdy's surviving sisters, and his second wife Elsa (who died in 1986), Plaintiffs fail to allege sufficient facts to establish that they meet Illinois statutory standing requirements to sue as representatives of foreign estates. *Hunter v. PepsiCo, Inc.*, 631 Fed.Appx. 445, 446 (7th Cir. 2015).

*Second*, specific personal jurisdiction does not exist over the Sompo Entities in Illinois. None of the Defendants reside in Illinois and none of the alleged activities giving rise to the action occurred here. Non-resident Plaintiffs claim ownership of the Vincent Van Gogh painting *Sunflowers* (the "Painting"), which has been on display in Tokyo for over 36 years. (Cplt. ¶¶54-

---

[1] Each Sompo Entity attaches and incorporates its respective Declaration ("Decl.") in Support of Defendants' Motion to Dismiss as an Exhibit hereto. *See* Exhibit A, Sompo Holdings' Declaration of Toyofumi Noma ("Sompo Holdings Decl."); Exhibit B, Sompo Japan's Declaration of Akira Yoshida ("Sompo Japan Decl."); Exhibit C, Sompo Bermuda's Declaration of Greg Garside ("Sompo Bermuda Decl."); and Exhibit D, Art Foundation's Declaration of Takefumi Umemoto ("Art Foundation Decl.").

1

55, 256). Plaintiffs seek to recover the Painting or its alleged fair market value (*i.e.*, $250 million) and approximately $1.5 billion in damages for the alleged "commercial exploitation" of the Painting by Sompo Holdings (a Japanese company headquartered in Tokyo), Sompo Japan (a Japanese company headquartered in Tokyo), Sompo Bermuda (a Bermuda company headquartered in Pembroke, Bermuda), and the Art Foundation (a Japanese public-interest corporation headquartered in Tokyo). Plaintiffs fail to satisfy the "minimum contacts" with Illinois that are prerequisite to the exercise of specific personal jurisdiction over any of the Sompo Entities because their alleged conduct is not "suit-related" or targeted to Illinois, which is necessary to create a substantial connection with the forum State to satisfy due process. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). None of Defendants' conduct, including, for example, the alleged sale of insurance, the alleged use of the *Sunflowers* image for branding, or the exhibition of the Painting at the Art Institute of Chicago for approximately 3 ½ months in *2001* (the "Exhibition"), creates a substantial connection with Illinois sufficient to confer specific jurisdiction over Defendants consistent with due process.

*Third*, even if the Court had jurisdiction over Defendants (which it does not), the Court should dismiss the Complaint based on the doctrine of *forum non conveniens* because this dispute is properly heard in the courts of Japan.

## BACKGROUND

### I.   THE PARTIES

Schoeps is a German citizen residing in Berlin. (Cplt. ¶19). Kesselstatt resides in Munich. (Cplt. ¶21). Enhoerning is a dual citizen of Sweden and the United States, residing in Sweden. (Cplt. ¶20). Plaintiffs purport to sue as the "representatives" of the "legal" and "living" heirs (the "Heirs") of Mendelssohn-Bartholdy, of his sisters and of his second wife Elsa (collectively, the "Decedents"). (Cplt. ¶17).

2

274293100

Sompo Holdings is a foreign holding company with subsidiaries located throughout the world. (Sompo Holdings Decl., ¶5). Sompo Holdings is incorporated in Japan and has its principal place of business and sole office in Tokyo, Japan. (*Id.* ¶¶3, 7). Sompo Holdings has never had direct or exclusive control over the Painting. (*Id.* ¶12). Sompo Japan is a subsidiary of Sompo Holdings and is a foreign insurance company with subsidiaries located throughout the world. (Sompo Japan Decl., ¶6). It is incorporated in Japan, with its principal place of business and headquarters in Tokyo. (*Id.* ¶3). Sompo Japan (formerly Yasuda Fire and Marine Insurance Company Limited ("Yasuda")), acquired *Sunflowers* at a public auction held in London in 1987 and continues to own it today. (*Id.* ¶8).

Sompo Bermuda is an indirect subsidiary of Sompo Holdings and is a foreign holding company with subsidiaries located throughout the world. (Sompo Bermuda Decl., ¶¶5, 7). It is incorporated in Bermuda, with its principal place of business and sole office in Pembroke, Bermuda. (*Id.* ¶¶3, 6). It does not sell insurance or do business in the U.S. (*Id.* ¶7). Sompo Bermuda has never owned or had possession, control or dominion over the Painting. (*Id.* ¶13). The Art Foundation is an incorporated foundation and obtained a public interest corporation authorization under Article 4 of the Act on Authorization of Public Interest Incorporated Associations and Public Interest Incorporated Foundations (Act No. 49, June 2, 2006, as amended). (Art Foundation Decl., ¶3). It is incorporated in Japan with its principal place of business and sole office in Tokyo. (*Id.* ¶¶3-4). The Art Foundation manages the art collection in the Sompo Museum of Art in Tokyo, where *Sunflowers* and several other works of art are on permanent display. (*Id.* ¶¶11-12). It does not own the Painting. (*Id.* ¶16).

3

274293100

## II. **PLAINTIFFS' CLAIMS**

Thirty-six years ago, in March 1987, Sompo Japan (formerly Yasuda) acquired the Painting at a highly publicized auction held by Christie's auction house in London. (Cplt. ¶¶2, 5). Since then, *Sunflowers* has remained in Japan on public display, except for brief exhibitions more than twenty-two years ago at the Art Institute of Chicago (September 22, 2001 - January 13, 2002) and the Van Gogh Museum in Amsterdam (February 9 - June 2, 2002). (Cplt., Ex. 18).

As alleged in the Complaint, immediately prior to Yasuda's acquisition of the Painting in 1987, Edith Beatty of London owned *Sunflowers*. (Cplt. ¶208). The Beatty family likely acquired the Painting in 1934 from Paris-based art dealer Paul Rosenberg ("Rosenberg"), who Plaintiffs allege acquired it from German citizen and resident Mendelssohn-Bartholdy shortly before. (Cplt. ¶¶239-240). Mendelssohn-Bartholdy died in Germany in 1935, while his second wife Elsa lived until 1986. (Cplt. ¶15).

Plaintiffs – the alleged "representatives" of the "legal" and "living" heirs of Mendelssohn-Bartholdy, of his sisters and of his second wife Elsa – claim that Mendelssohn-Bartholdy's transfer of the Painting nearly 90 years ago to Rosenberg or the Beatty family occurred under "duress" caused by the rise of the Nazi party in Germany. (Cplt. ¶292). According to Plaintiffs, Yasuda's acquisition of *Sunflowers* in 1987 is "tainted," and they are the rightful owners. (Cplt. ¶¶2, 102).

Plaintiffs assert twelve causes of action seeking to recover *Sunflowers*, its alleged fair market value and damages: (1) Replevin (Count One); (2) Conversion (Count Two); (3) Trover (Count Three); (4) Imposition of a Constructive Trust Under Illinois Law for the Recovery of *Sunflowers* (Count Four); (5) Unjust Enrichment under Illinois Law Seeking to Recover Monies that Defendants Wrongfully have Reaped from Commercially Exploiting *Sunflowers* (Count Five); (6) Breach of Duty to Assist the Heirs in Recovering *Sunflowers* (Count Six); (7) Breach of Duty under Illinois Law to Refrain from Commercially Exploiting *Sunflowers* (Count Seven); (8)

4

Slander of Title under Illinois Law (Count Eight); (9) Restitution for the Return of *Sunflowers* under Federal Common Law (Count Nine); (10) Unjust Enrichment for Conscious Wrongdoing Under Federal Common Law (Count Ten); (11) Restitution for the Return of *Sunflowers* Based Upon the Plenary Equitable Authority of the Court under Art. III, Sec. 2 of the U.S. Constitution (Count Eleven); and (12) Unjust Enrichment for Conscious Wrongdoing Based Upon the Plenary Equitable Authority of the Court under Art. III, Sec 2 of the U.S. Constitution (Count Twelve).

Each of Plaintiffs' causes of action falls into either of two general categories of claims: (1) the alleged right to possession of the physical Painting and its return or its fair market value (the "Conversion Claims" – Counts One, Two, Three, Four, Six, and Eleven) or (2) the alleged right to monetary damages based on Defendants' commercial exploitation of *Sunflowers* (the "Exploitation Claims" – Counts Five, Seven, Eight, Nine, Ten and Twelve).

## APPLICABLE LEGAL STANDARDS

## I. CHALLENGE TO SUBJECT MATTER JURISDICTION

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction over the action. Fed. R. Civ. P. 12(b)(1); *Sifuna v. Accred. Coun. of Pharmacy Educ.,* 17 CV 0028, 2017 WL 5891224, at *1 (N.D. Ill. Nov. 28, 2017). Plaintiffs bear the burden of establishing that subject matter jurisdiction exists and that they have standing to bring each claim. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992)). When evaluating a facial challenge to subject matter jurisdiction, a court will apply *Iqbal-Twombly's* "plausibility" requirement of pleading sufficient facts to support standing. *Id.*, at 174. A complaint lacking these facts is subject to dismissal. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009).

5

## II.     **CHALLENGE TO SPECIFIC PERSONAL JURISDICTION**

A Rule 12(b)(2) motion challenges whether the Court has personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). Plaintiffs bear the burden of proof and, where a Rule 12(b)(2) motion is determined based on the submission of written materials and without an evidentiary hearing, they must establish a *prima facie* case of personal jurisdiction. *Shanahan v. Nat'l Auto Prot. Corp.*, 1:19-CV-03788, 2020 WL 3058088, at *1 (N.D. Ill. June 9, 2020) (citing *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014)). While on a motion to dismiss the court is required to resolve factual disputes in a plaintiff's favor, the court must also accept as true all unrefuted facts in the defendant's declarations. *Id*. at *1 (citing *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014)). Because the Sompo Entities challenge with sworn declarations certain facts alleged in the Complaint, Plaintiffs must submit affirmative evidence to support this Court's exercise of personal jurisdiction. *Id*.

## III.     **CHALLENGE BASED ON THE DOCTRINE OF *FORUM NON CONVENIENS***

"Under the doctrine of *forum non conveniens*, a court has the discretion to dismiss a case over which it normally has jurisdiction if in doing so 'it best serves the convenience of the parties and the ends of justice.'" *GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*, 64 F. Supp. 3d 1179, 1192 (N.D. Ill. 2014) (quoting *Kamel v. Hill–Rom Co.*, 108 F.3d 799, 802 (7th Cir. 1997)). The doctrine of *forum non conveniens* applies where: (1) an alternative forum exists which has jurisdiction over the case that is both available and adequate, and (2) the balance of relevant private and public interests weighs in favor of dismissal. *Id*. Dismissal is proper where Plaintiffs' chosen forum would impose "oppressiveness and vexation to a defendant" that is "out of all proportion to plaintiff's convenience." *Id*.

## ARGUMENT

### I. THIS COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(1) BECAUSE PLAINTIFFS LACK STANDING

Plaintiffs that lack standing "are not entitled to have their claims litigated in federal courts." _Family & Children's Center, Inc. v. School City of Mishawaka_, 13 F.3d 1052, 1058 (7th Cir. 1994). Courts resolve standing questions "according to a two-part inquiry that considers 'both constitutional limitations of federal court jurisdiction and prudential limitations in its exercise.'" _Id_. To survive a Rule 12(b)(1) challenge, a litigant seeking relief in federal court must satisfy "both constitutional and prudential limitations in order to have standing to sue." _Id_.

#### A. Plaintiffs Fail to Plead Representative Standing To Sue.

Plaintiffs fail to satisfy prudential requirements to proceed on their action given that they fail to plead representative standing to sue. _Apex,_ 572 F.3d at 443-44. Applied here, Plaintiffs cannot sue in their representative capacities for foreign estates absent evidence that they have the requisite authority to do so. _Hunter_, 631 Fed.Appx. at 446. Plaintiffs' conclusory allegations that they are "heirs" and "agents and representatives" of the Heirs of the Decedents with authority to pursue this action that allegedly survives the Decedents are insufficient.[2] They do not establish the requisite legal authority to act in their capacities as heirs or in a representative capacity of any other alleged heirs of the Decedents under Illinois law (let alone under the laws of any foreign state or country) to confer standing.

The ability to sue in a representative capacity is determined by the law of the state where the court is located. _Id._; _see_ Fed. R. Civ. P. 17(b). In Illinois, statutory and common law actions

---

[2] Plaintiffs interchangeably refer to themselves as: "the heirs of… Paul von Mendelsohn-Bartholdy…" (Cplt. ¶1); the "living heirs through descent and relevant law of… Mendelssohn's four sisters" (Cplt. ¶17); "all of the living heirs through descent and relevant law of Elsa" (Cplt. ¶17); and the "agents and representatives" of unnamed heirs (Cplt. ¶¶19-21).

7

that accrued to the decedent before death survive the death of the decedent. *Myers v. Heritage Enters., Inc.*, 332 Ill.App.3d 514, 516-17, 773 N.E.2d. 767, 768–69 (4th Dist. 2002). These so-called "survival actions" include "actions of replevin, … actions to recover damages for injury to real or personal property or for the detention or conversion of personal property…." 755 ILCS § 5/27-6. Survival actions *must* be brought by an "executor or administrator… on behalf of the estate*." Hunter,* 631 Fed.Appx. at 446; *see also Will v. Northwestern Univ.*, 378 Ill.App.3d 280, 881 N.E.2d 481, 492–93 (1st Dist. 2007) (survival actions in Illinois must be brought by the estate's administrator or representative, and beneficiaries and heirs have neither a right of action nor any control); *McGill v. Lazzaro*, 92 Ill. App. 3d 393, 395, 416 N.E.2d 29, 31 (1st Dist. 1980) ("The well-established rule in this state is that the executor or administrator of a decedent's estate has standing to file suit on behalf of the decedent, but the legatees, heirs, and devisees have no such standing.").

To act as an executor or administrator of an estate in Illinois requires the "issuance of letters of office," which are a "hallmark of 'personal representatives' as that term is commonly understood when applied to situations involving estates…." *Relf v. Shatayeva*, 2013 IL 114925, ¶33, 998 N.E.2d 18, 27 (Ill. 2013) (distinguishing between "personal representatives" appointed to serve as "officers of the court" pursuant to the Illinois Probate Act of 1975 (755 ILCS § 5/1-1 *et seq.*), "special representatives" and "special administrators" and finding that "personal representatives" refer specifically to individuals appointed to settle and distribute assets of a decedent's estate). To pursue a claim, an executor or administrator must present letters of office issued in Illinois or "by a court of competent jurisdiction of any other state, territory, country or the District of Columbia…." 755 ILCS § 5/22-3; *see also O'Donnell v. Elgin, J. & E. Ry. Co.*, 193 F.2d 348 (7th Cir. 1951) (recognizing the capacity of a duly appointed administrator to sue).

8

Here, Plaintiffs allege that (1) their causes of actions "survived" the Decedents' deaths (Cplt. ¶¶19-22); and (2) "German Inheritance Law" allows them, in their capacity as "heirs" of each of the Decedents to sue on behalf of other heirs of the Decedents, as their "agents" and "representatives" (Cplt. ¶¶12-18). These allegations are insufficient to confer standing. Under Illinois law, heirs "neither have a right of action nor any control" over estate matters, including the pursuit of actions that "survive" a decedent. *Hunter,* 631 Fed.Appx. at 446. On the contrary, only an "administrator" or "executors" with issued letters of office can pursue an action for recovery under a survival action for any of the Decedents. *See also Relf,* 998 N.E.2d at 27. Here, no Plaintiff alleges that he or she is acting as the administrator, executor or estate representative of any Decedent, either as the court-appointed representatives pursuant to a probate matter in Illinois or in any other jurisdiction, or provides any evidence that any court issued letters of office to them. (*See* Cplt. ¶¶19-22). As such, Plaintiffs lack standing and capacity to pursue survival actions in a representative capacity for the Decedents.

Plaintiffs' proffered affidavit executed by a German attorney does not support their contention that their heirship status confers standing to pursue their claims in this action. (Cplt. ¶18). Rather, that affidavit merely describes Plaintiffs' family history (*i.e.*, one Decedent was married to another Decedent, they allegedly agreed to a "Contract of Inheritance," and upon the first Decedent's death, the Decedent's four sisters became "residuary owners" of property), and then concludes without factual or legal basis that "relevant heirs" allegedly authorized the Plaintiffs to "act as their agents and representatives in this action." (*Id.* at Ex. 4, ¶5). Those are not

9

grounds on which the Court may bypass the application of Illinois probate law to allow Plaintiffs to pursue this action in a representative capacity. _Hunter,_ 631 Fed.Appx. at 446.[3]

Notably, Schoeps has failed to overcome this standing hurdle before. In litigation he initiated years ago to recover a Picasso painting previously owned by Mendelssohn-Bartholdy and subsequently acquired by the Andrew Lloyd Webber Foundation, the New York Appellate Division affirmed a lower court's decision requiring Schoeps to obtain letters of office as the representative of Mendelssohn-Bartholdy's estate to pursue his claims. _See Schoeps v. Andrew Lloyd Webber Foundation_, 66 A.D.3d 137 (N.Y. 2009). Finding that Schoeps failed to establish standing, the New York appellate court held that because Schoeps sought recovery for claims accrued by Mendelssohn-Bartholdy during his life, only Mendelssohn-Bartholdy's _estate_ by an estate representative – not Mendelssohn-Bartholdy's individual heirs – had standing to pursue recovery. _Id_. at 140. Schoeps argued unsuccessfully that he had standing as an individual vested with title to the painting because German law allowed for a decedent's "ownership rights" to immediately vest in his heirs upon the death of a decedent, rather than title vesting to the "estate" of a decedent. _Id_. at 139. The New York court rejected Schoeps' argument and rejected all "cases

---

[3] The cases inappropriately cited in Plaintiffs' Complaint (_see_ Fed. R. Civ. P. 8) are inapposite. In _Moore v. Brandenberg_, which pre-dates the Illinois Probate Act by 65 years, the court held that despite the general rule that "the _administrator_ represents the deceased as to the personal estate and is entitled to take possession of it", property could be distributed without an administrator where the "only parties having any interest in the property in dispute are parties to the litigation." 248 Ill. 232, 236 (1910)) (emphasis added). In contrast to _Moore_, where all heirs having any interest in the property at issue were parties to the action, here, Plaintiffs assert that they are _some_ of the parties having an interest in _Sunflowers_ acting on behalf of the living heirs. (Cplt. ¶17). _Accord Wach v. Byrne, Goldenberg & Hamilton, PLLC_, 910 F. Supp. 2d 162, 169 n.6 (Dist. D.C. 2012) (dispute between "heirs" of Mendelssohn-Bartholdy over settlement proceeds from the resolution of claims over alleged Nazi-tainted art and the lack of an "Erbeshine", which is issued by a German court attesting to a person's heirship).

Plaintiffs' reliance on _Wilson v. Sunstrand Corp.,_ which involved an heir's use of a German law mechanism to identify him as heir entitled to pursue wrongful death and survival actions in Illinois for non-U.S. resident decedents is also misplaced. 2002 WL 99745 *3 (N.D. Ill. Jan. 25, 2002). In contrast to _Wilson_, the Plaintiffs neither rely on any foreign law mechanism entitling them to bring suit nor are they the Decedents' "sole" heirs. _See id._ at *4.

[which] provide precedent for allowing individuals who assert rights obtained through inheritance from a foreign decedent to pursue claims in New York *without first obtaining letters*" pursuant to New York law "or at least following the alternate procedure… of submitting an affidavit, as well as whatever other proof may be required by the court." *Id.* at 143.[4] Pursuant to Illinois law (like New York law), only the *representative of an estate* – not the decedent's heirs – may maintain an action that accrued during the decedent's life. Plaintiffs' failure to allege facts to support representative capacity requires the Complaint's dismissal for lack of standing.[5]

**B.  Plaintiffs' Invitation to Create Causes of Action Under "Federal Common Law" or "Plenary Equitable Authority Under Article III" to Confer Subject Matter Jurisdiction Should be Rejected.**

The Court should reject Plaintiffs' invitation to create subject matter jurisdiction for the non-existent "federal common law" claims asserted in Counts Nine (Restitution for the Return of *Sunflowers*) and Ten (Unjust Enrichment for Conscious Wrongdoing). (Cplt. ¶¶315-317, 318-321). Similarly, the Court should reject Plaintiffs' suggestion that it can exercise its "plenary equitable

---

[4] The New York Appellate Division distinguished the cases relied upon by the court in *Schoeps v. The Museum of Modern Art*, 594 F. Supp. 2d 461 (S.D.N.Y. 2009) (Cplt., Ex. 2). *Schoeps*, 66 A.D.3d at 143. The Appellate Division held that, even if foreign law afforded heirs a method of establishing their title rights, the statutory requirements of the relevant jurisdiction must be met in order to pursue claims on behalf of the decedent's estate and that "merely being vested with title at the time of the decedent's death is insufficient grounds for permitting a party to pursue a claim…". *Id.* at 144.

[5] Plaintiffs also lack standing under Illinois' Consumer Fraud and Deceptive Business Practices Act ("ICFA") because they do not allege (1) an ICFA injury-in-fact, or (2) any causal connection between Defendants' conduct and any alleged ICFA injury to them. *See Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 908 (N.D. Ill. 2012). To establish statutory standing to bring an ICFA claim, a plaintiff must either be a consumer or satisfy the consumer nexus test, which requires pleading "with the same particularity and specificity as that required under common law fraud" the following: "(1) that [plaintiff's] actions were akin to a consumer's actions to establish a link between [plaintiff] and consumers; (2) how defendant's representations… concerned consumers other than [plaintiff]; (3) how defendant's particular [action] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers." *Thrasher-Lyon*, 861 F. Supp. 2d at 908, 913. Plaintiffs lack statutory standing because they do not (1) allege that they are Illinois consumers or (2) sufficiently set forth factual allegations satisfying the consumer nexus test under the IFCA.

authority" under Article III, Section 2 of the U.S. Constitution to create subject matter jurisdiction for their "Restitution for the Return of *Sunflowers*" (Count Eleven) and "Unjust Enrichment for Conscious Wrongdoing" (Count Twelve). (Cplt. ¶¶322-325, 326-329).

The U.S. Supreme Court has long held that "there is 'no federal general common law.'" *Rodriguez v. Fed. Deposit Ins. Corp.*, 140 S. Ct. 713, 717 (2020) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938)). "Instead, only limited areas exist in which federal judges may appropriately craft the rule of decision." *Id.* (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 729, 124 S. Ct. 2739, 2764 (2004)) ("The cases in which federal courts may engage in common lawmaking are few and far between."). The U.S. Supreme Court has made it clear that "before federal judges may claim a new area for common lawmaking, strict conditions must be satisfied." *Id.* at 717. One of the two following conditions must be satisfied for courts to formulate a federal common law cause of action: (1) "a federal rule of decision is 'necessary to protect uniquely federal interests'" or (2) "Congress has given the courts the power to develop substantive law." *United States v. Park*, 389 F. Supp. 3d 561, 579 (N.D. Ill. 2019) (quoting *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S. Ct. 2061, 2067 (1981)). Neither of these conditions exist here.

Under the first category, courts have determined that the "narrow areas" of law are "those concerned with the rights and obligations of the United States." *Park*, 389 F. Supp. 3d at 580 (citing *Texas Indus.*, 451 U.S. at 640–41). Examples of this category include: "interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Texas Indus.*, 451 U.S. at 641; *see Rodriguez*, 140 S. Ct. at 717. Under the second category, the existence of congressional authority under Article I does not mean that "federal courts are free to develop a common law to govern those areas until Congress acts."

12

*Texas Indus.*, 451 U.S. at 641. "Courts have considered whether the judicial creation of a right is necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress." *Park*, 389 F. Supp. 3d at 579. No such necessity exists here. First, Plaintiffs' claims do not impact interstate or international disputes between states or foreign nations nor admiralty. Second, as explained below, there is no necessity, let alone authority, to create causes of action under the statutes or the Declarations that Plaintiffs rely on.

Plaintiffs contend that "when important federal legislative policies and the public interest are at stake, Article III, Section 2 of the U.S. Constitution invests the federal judiciary with the broadest range of plenary equitable authority" (Cplt. ¶8) to satisfy subject matter jurisdiction and craft appropriate remedies. However, Article III "authorizes the federal judiciary only to decide cases or controversies…arising under federal law or within the diversity jurisdiction." *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 911 (7th Cir. 2017). Both the Supreme Court and the Seventh Circuit have clarified that courts only have equitable authority to provide remedies implied in a statute when the remedy is compatible with the statute's express remedial scheme. *See Meghrig v. KFC W., Inc.*, 516 U.S. 479, 487–88, 116 S. Ct. 1251, 1256 (1996); *Fed. Trade Comm'n v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 767 (7th Cir. 2019).

Plaintiffs cite the Holocaust Expropriated Art Recovery Act of 2016, PL 114-308, December 16, 2016, 130 Stat 1524 (the "HEAR Act") (Cplt. ¶115) as the basis for their causes of action and for the Court to exercise its "plenary equitable authority" to grant equitable relief in Counts Nine through Twelve. They contend "[t]he HEAR [Act]…implicates signal and exclusive federal foreign policy concerns" (Cplt. ¶115) to enable the Court's authority. The HEAR Act, however, does not create causes of action thereunder, let alone dictate a remedial scheme for recovery of Nazi-stolen art. Congress' intent on this issue is clear: "**Nothing in this Act shall be**

construed to create a civil claim or cause of action." PL 114-308, §5(f) (emphasis added). *See Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 195 (2d Cir. 2019) (an Amicus "urges us [to] extend the HEAR Act beyond its enumerated scope and to create a federal common law cause of action for replevin for 'Nazi-confiscated artwork.'… We decline to do so.").

Further, when a statute already provides a remedy (such as the HEAR Act's limited extension of certain statutes of limitation under certain circumstances), courts refuse to use their equitable authority to provide an additional remedy not expressly provided for in the statute. For example, in *Credit Bureau*, the Seventh Circuit concluded that it did not have equitable authority to order restitution after it analyzed the section of the Federal Trade Commission Act that the plaintiff relied on to bring suit, and found other remedies were contemplated by the FTC Act. 937 F.3d at 775. In relevant part, the court held that "nothing in the text or structure of the FTC Act supports an implied right to restitution in [the] section" and "the Supreme Court recognizes the importance of Congress's choice to specify forms of relief." *Credit Bureau*, 937 F.3d at 775, 780 (citation omitted); *see also Meghrig*, 516 U.S. at 484 (the court refused to award equitable restitution after analyzing the Resource Conservation and Recovery Act because the Act did not contemplate this type of remedy).[6] Because Congress explicitly *refused* to "create a civil claim or cause of action under Federal or State law" under the HEAR Act or dictate any federal remedies, the Court must reject Plaintiffs' invitation to this Court to create a cause of action or remedy under

---

[6] Plaintiffs assert in their Complaint that *Kansas v. Nebraska*, 574 U.S. 445 (2015) supports finding that plenary equitable authority allows this Court to compel Defendants to forfeit their alleged unjust enrichment. (Cplt. ¶¶8, 113). The Supreme Court in *Kansas*, however, did not decide a suit *between private parties* when it determined "[t]his Court has recognized for more than a century its inherent authority, as part of the Constitution's grant of original jurisdiction, to equitably apportion interstate streams **between States**." *Id*. at 454 (emphasis added). *Kansas* lends no support to Plaintiffs' reach here.

"federal common law" or use its "plenary equitable authority" in Counts Nine through Twelve to establish subject matter jurisdiction.[7]

## II.      THIS COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION OVER DEFENDANTS

Plaintiffs' Complaint fails to allege facts to support specific personal jurisdiction over the Sompo Entities.[8] "Under the Due Process Clause of the Fourteenth Amendment, a district court may exercise personal jurisdiction over an out-of-state defendant only if the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" _Sifuna,_ 2017 WL 5891224, at *5 (citing _Int'l Shoe Co. v. State of Wash., Office of Unempl. Comp._, 326 U.S. 310, 316 (1945)). Defendants' lack of

---

[7] Plaintiffs also cite the Holocaust Victims Redress Act ("HVRA") and other U.S. Declarations. (Cplt. ¶¶230-234). However, like the HEAR Act, the HVRA does not create a private right of action. _See Orkin v. Taylor_, 487 F.3d 734, 739-40 (9th Cir. 2007) (holding that "[t]he plain text of the Holocaust Victims Redress Act leaves little doubt that Congress did not intend to create a private right of action."). The _Orkin_ court explained "**state law** provides causes of action for restitution of stolen artworks. Furthermore, the torts asserted here are undoubtedly causes of action that are traditionally relegated to state law. Implication of a federal remedy in this case, therefore, would be inappropriate under the fourth _Cort_ factor." _Id._ at 740 (citing _Cort v. Ash_, 422 U.S. 66, 78, 95 S. Ct. 2080, 2088 (1975) (emphasis added); _see Dunbar v. Seger-Thomschitz_, 638 F. Supp. 2d 659, 664 (E.D. La. 2009) ("there is no 'federal common law' cause of action created by [HVRA]."). Further, neither the _Terezin Declaration_ nor the _Washington Conference_ cited by Plaintiffs (Cplt. ¶87) give this Court the power to create substantive law or provide subject matter jurisdiction for Plaintiffs' claims. Both the _Terezin Declaration_ and the _Washington Conference_ expressly state that they are "non-binding" and _not_ enacted by Congress. _See_, Prague Holocaust Era Assets Conference, _Terezín Declaration_ (June 30, 2009), https://www.state.gov/prague-holocaust-era-assets-conference-terezin-declaration/; _Washington Conference Principles on Nazi-Confiscated Art_ (December 3, 1998), https://www.state.gov/washington-conference-principles-on-nazi-confiscated-art/.

[8] Plaintiffs do not allege that this Court has _general_ personal jurisdiction over Defendants. To do so would have been futile. "General jurisdiction 'is proper only in the limited number of fora in which the defendant can be said to be 'at home.' For a corporation, such places include the state of incorporation and the state of the principal place of business.'" _Baker Dental Corp. v. Aurex Dental Inc._, 2014 WL 4414520, at *2 (N.D. Ill. Sept. 5, 2014) (quoting _Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc._, 751 F.3d 796, 800 (7th Cir. 2014)); _see Daimler AG v. Bauman_, 571 U.S. 117, 132 (2014). Here, Sompo Holdings and Sompo Japan have their principal place of business in Japan. (Cplt. ¶29); (Sompo Holdings Decl., ¶3); (Sompo Japan Decl., ¶3); Sompo Bermuda has its principal place of business in Bermuda. (Cplt. ¶31); (Sompo Bermuda Decl., ¶3). The Art Foundation has its principal place of business and operates in Tokyo, Japan. (Cplt. ¶42); (Art Foundation Decl., ¶4). Thus, none of the Defendants is "at home" in Illinois to confer general personal jurisdiction over it. _Leibovitch v. Islamic Republic of Iran_, 188 F. Supp. 3d 734, 746 (N.D. Ill. 2016), _aff'd_, 852 F.3d 687 (7th Cir. 2017).

suit-related contacts with this forum requires dismissal of the Complaint for lack of specific jurisdiction.

### A. The Court Lacks Specific Personal Jurisdiction Over Defendants Because Their Alleged Suit-Related Conduct Does Not Create a Substantial Connection With Illinois.

Specific jurisdiction has three essential requirements. First, "the defendant's contacts with the forum state must show that it 'purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state.' Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." _Lexington Ins. Co. v. Hotai Ins. Co., Ltd._, 938 F.3d 874, 878 (7th Cir. 2019). The U. S. Supreme Court has held that, for specific personal jurisdiction to exist and be consistent with due process, "the defendant's **suit-related conduct must create a substantial connection with the forum State.**" _Walden_, 571 U.S. at 284 (emphasis added). Moreover, "[w]hen there is no such connection, specific jurisdiction is lacking _regardless_ of the extent of a defendant's _unconnected_ activities in the State." _Bristol-Myers Squibb Co. v. Sup. Court of Calif., San Francisco Cnty._, 582 U.S. 255, 264 (2017); _see also Goodyear Dunlop Tires Operations, S.A. v. Brown_, 564 U.S. 915, 931, n. 6 (2011) (stating "even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales"). The determination of personal jurisdiction "is 'case-specific' and exists where the plaintiff's claim is 'linked to the activities or contacts' of the defendant with Illinois." _Comitz v. Rife_, 597 F. Supp. 3d 1235, 1240 (N.D. Ill. 2022) (quoting _Kipp v. Ski Ent. Corp. of Wisconsin Inc._, 783 F.3d 695, 697-698 (7th Cir. 2015)).

The determination here requires an examination of each Defendant's alleged "suit-related conduct" with Illinois. "[N]ot just any contacts will do: 'For a State to exercise jurisdiction

16

consistent with due process, the defendant's *suit-related* conduct must create a substantial connection *with the forum State*.'" *Advanced Tactical*, 751 F.3d at 801 (quoting *Walden*, 571 U.S. at 284 (emphasis added)); *see Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) ("'We cannot simply aggregate all of a defendant's contacts with a state – no matter how dissimilar in terms of geography, time, or substance – as evidence of the constitutionally required minimum contacts.'") (quoting *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997)). Consistent with Supreme Court precedent, the Seventh Circuit looks to whether a defendant's alleged suit-related tort against the plaintiff was linked through conduct "'expressly aimed' at the forum state." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010) (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)). The Seventh Circuit's express aiming test requires: "(1) **intentional conduct** (or 'intentional and allegedly tortious' conduct); (2) **expressly aimed at the forum state**; (3) **with the defendant's knowledge that the effects would be felt—that is, plaintiff would be injured—in the forum state**." *Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F. Supp. 3d 883, 890 (N.D. Ill. 2014) (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010) (emphasis added).

Plaintiffs allege <u>four general categories of conduct</u> or contacts they contend give rise to specific personal jurisdiction over the Sompo Entities as to their claims in Illinois. (Cplt. ¶¶6, 56, 81-86). Plaintiffs variously allege that certain Defendants: (1) sell insurance in the United States (Cplt. ¶84); (2) advertise internationally, maintain social media presence, and websites that are accessible throughout the world (Cplt. ¶¶56, 81-83, 84-85); (3) use the *Sunflowers* image in a corporate "brand" viewable in Illinois (Cplt. ¶86); and allege that, (4) in 2001, Yasuda contracted with the Art Institute of Chicago for a 3 ½ month exhibition of *Sunflowers* in Illinois. (Cplt. ¶6). For the reasons explained below, these allegations are insufficient to confer specific personal

17

jurisdiction over any of the Sompo Entities.

### 1. Plaintiffs Do Not Allege Suit-Related Contacts Between Defendants and Illinois.

#### a. Plaintiffs' Conversion Claims do not arise from Defendants' alleged Illinois-related or Illinois-directed activities.

<u>Count One</u> alleges a claim for replevin, which seeks possession of personal property owned by one party, but wrongfully deprived of that property by another. 735 ILCS § 5/19-104. Under Illinois law, "[r]eplevin does not lie against one not in possession at the time the action is brought." *Bhutani v. Courts of Northbrook Condo. Ass'n,* 2017 IL App (1st) 162378-U, ¶ 97, 2017 WL 3995738 (citing *Huber Pontiac, Inc. v. Wells,* 59 Ill. App. 3d 14, 19, 375 N.E.2d 149, 153 (4th Dist. 1978). Neither Sompo Holdings nor Sompo Bermuda is in possession of the Painting. (Sompo Holdings Decl., ¶12); (Sompo Bermuda Decl., ¶13). Therefore, Count One seeking replevin against Sompo Holdings or Sompo Bermuda cannot arise from any of their activities, let alone activities that took place in Illinois.[9] The Art Foundation manages the Sompo Museum of Art located in Tokyo where *Sunflowers* is on loan from Sompo Japan for public display. (Art Foundation Decl., ¶¶11-12, 15). Sompo Japan (formerly Yasuda) acquired *Sunflowers* in London in 1987 and has exerted control over and publicly displayed the Painting in Tokyo ever since (except for two brief exhibitions at the Art Institute of Chicago and the Van Gogh Museum in Amsterdam between September 2001 through June 2002). (Sompo Japan Decl. ¶¶8, 9, 12, 13, 19). There are simply no contacts between any of the Sompo Entities and *Illinois* related to Plaintiffs' replevin claim.

<u>Count Two</u> alleges conversion. Like a claim for replevin, a claim for conversion involves the right of one party to property, a demand for that property, and the wrongful detention or control

---

[9] Neither Sompo Holdings nor Sompo Bermuda were even in existence at the time *Sunflowers* was acquired by Yasuda in 1987. (Sompo Holdings Decl., ¶8); (Sompo Bermuda Decl., ¶10).

of the property by another. *In re Karavidas*, 2013 IL 115767, ¶ 61, 999 N.E.2d 296, 310 (Ill. 2013) (citing *Loman v. Freeman*, 229 Ill.2d 104, 127, 890 N.E.2d 446, 461 (Ill. 2008) (quoting *Cirrincione v. Johnson*, 184 Ill.2d 109, 114, 703 N.E.2d 67, 70 (Ill. 1998)). *See Jensen v. Chicago & W. Indiana R. Co.*, 94 Ill. App. 3d 915, 932, 419 N.E.2d 578, 593 (1st Dist. 1981) (For conversion, "[a]ll that is required is that defendant exercise control over the chattel in a manner inconsistent with plaintiff's right of possession."). Sompo Holdings does not own *Sunflowers* and it has never had direct or exclusive control over it. (Sompo Holdings Decl., ¶¶9, 12). Sompo Bermuda does not own *Sunflowers* and it has never had possession of, or exercised dominion or control over *Sunflowers*, let alone in Illinois (Sompo Bermuda Decl., ¶¶11, 13). Sompo Japan (formerly Yasuda) acquired *Sunflowers* at public auction in London in 1987 and has publicly displayed the Painting in Tokyo ever since (except for two brief exhibitions at the Art Institute of Chicago and the Van Gogh Museum in Amsterdam between September 2001 through June 2002). (Cplt. ¶5; Sompo Japan Decl. ¶¶8, 12, 19). Lastly, the Art Foundation manages the Painting in Tokyo. (Art Foundation Decl., ¶¶11, 12, 15). There is no Sompo Entity exercising control over *Sunflowers* in *Illinois* necessary to support specific personal jurisdiction on Plaintiffs' conversion claim.

Count Three alleges a claim for "trover" against Defendants. Illinois law provides that trover is a cause of action used when personal property has been "wrongfully appropriated, or, in more technical language, converted to the use of any other than its rightful owner," and seeks damages for the value of the property. *Olson v. Olson*, 168 Ill. App. 358, 360, 1912 WL 2052 (2d Dist. 1912) (quoting 2 Sedgwick on Damages, 8th Ed., Sec. 492). Just as Plaintiffs fail to adequately allege that Sompo Holdings, Sompo Japan, Sompo Bermuda or the Art Foundation engaged in Illinois-related conduct giving rise to Plaintiffs' causes of action for conversion or

19

replevin, they do not allege that any of the Sompo Entities engaged in Illinois-related conduct giving rise to Plaintiffs' alleged cause of action for trover.

Count Four alleges a claim for the equitable remedy of "unjust enrichment". "Under Illinois law, there is no stand-alone claim for unjust enrichment." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019); *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 595 (N.D. Ill. 2020), aff'd as modified, 2023 WL 4446475 (7th Cir. July 11, 2023). Instead, "'if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim and will 'stand or fall with the related claim.'" *Bakopoulos v. Mars Petcare US, Inc.*, 20 CV 6841, 2021 WL 2915215, at *8 (N.D. Ill. July 12, 2021) (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). In *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 631, 888 N.E.2d 1190, 1200 (1st Dist. 2008), the court held that "[an unjust enrichment] claim is not a separate cause of action that, standing alone, would justify an action for recovery. 'Rather, it is a condition that may be brought about by unlawful or improper conduct…and may be redressed by a cause of action based upon that improper conduct.'" *See also Tavel v. Riddle*, 20 CV 6805, 2021 WL 1121120, at *5 (N.D. Ill. Mar. 24, 2021) (no personal jurisdiction over defendant "[b]ecause WWE wasn't involved in the May 2018 bus trip during which Tavel's injury occurred, her injury didn't arise out of WWE's Illinois-related activities").

Applied here, Plaintiffs fail to allege *any* facts to support a claim that the Sompo Entities conducted any activity directed to or in Illinois to give rise to any element of replevin, conversion or trover, or that such activity would thus provide jurisdiction over an unjust enrichment claim. *See In re Karavidas*, ¶ 61, 999 N.E.2d at 310. Any alleged "conversion" by Sompo Japan would have occurred when it acquired the Painting, either in Europe or Japan, but certainly not in Illinois.

20

(Cplt. ¶236); (Sompo Holdings Decl., ¶8); (Sompo Japan Decl., ¶8); (Sompo Bermuda Decl., ¶10); (Art Foundation Decl., ¶13). As a result, specific personal jurisdiction does not exist over the Sompo Entities in Illinois for Plaintiffs' claims.

Nor can the 3 ½ month exhibition of *Sunflowers* at the Art Institute of Chicago more than twenty-two years ago confer personal jurisdiction in Illinois over Defendants. (Cplt. ¶33). No Plaintiff attempted to assert ownership or demand possession of the Painting at the time of the Exhibition. (Sompo Japan Decl., ¶18). *See In re Karavidas*, ¶ 61, 999 N.E.2d at 310 (citing *Loman*, 229 Ill.2d 104, 127, 890 N.E.2d 446, 461 (Ill. 2008)). *See Graff v. Leslie Hindman Auctioneers, Inc.*, 342 F. Supp. 3d 819, 826 (N.D. Ill. 2018), *vacated on other grounds*, 2019 WL 13196397 (N.D. Ill. Feb. 12, 2019) (no demand for possession had been made in Illinois when the allegedly stolen art was temporarily in Illinois). The Exhibition twenty-two years ago does not create a substantial connection with Illinois sufficient to create specific jurisdiction over Sompo Japan, the Art Foundation or any of the other Defendants consistent with due process. *Matlin*, 921 F.3d at 706.

Plaintiffs' unjust enrichment claim in Count Four is based on the Sompo Entities' alleged "wrongful possession" of *Sunflowers*. (Cplt. ¶291). Again, neither Sompo Holdings nor Sompo Bermuda ever took possession of or had dominion or control over the Painting. (Sompo Holdings Decl., ¶¶9, 10, 12); (Sompo Bermuda Decl., ¶13). And for each of the tort claims alleged, Plaintiffs fail to plead any Illinois-connected activities by Sompo Japan, or the Art Foundation, sufficient to confer jurisdiction over them.

Finally, Count Six asserts a claim of "Breach of Duty Under Illinois Law to Assist the Heirs in Recovering *Sunflowers*" without pleading facts to support suit-related contacts between the Sompo Entities and Illinois. (*See* Cplt. ¶¶103, 301-304). The only possible suit-related contact

21

Plaintiffs can muster is *Plaintiffs'* present suit; they do not allege any Defendant's conduct occurred in Illinois to support jurisdiction. Plaintiffs also cite to the Restatement (Second) of Torts (1965) § 322, Comment "c." Plaintiffs misquote Comment "c," contending that it states "[t]he initial injury creates a duty of aid and the breach of the duty is an independent tort." (Cplt. ¶302). The primary thrust of the section is the duty to aid the victim for personal injury. *Id*. In *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983), however, the Seventh Circuit explained that, while "[a] tortfeasor has a duty to assist his victim, [t]he initial injury creates a duty of aid and the breach of the duty is an independent tort *See* Restatement (Second) of Torts § 322, Comment "c" (1965). **This principle applies to a statutory tort such as copyright infringement**." (emphasis added). Plaintiffs do not plead any statutory tort such as copyright infringement, and as explained herein, the *Sunflowers* image is in the public domain and available for anyone to exploit.

Plaintiffs rely on their conversion claim to support a duty in Count Six. (Cplt. ¶303) ("By acquiring *Sunflowers* in reckless disregard…and commercially exploiting the Painting… Sompo Holdings…and…Yasuda breached this duty."). However, even if there was a duty (there is not) Plaintiffs fail to allege facts that Defendants committed any conversion (or other tort) related conduct in Illinois necessary to bootstrap specific jurisdiction for their "failure to aid" claim.

        b.    Plaintiffs' Exploitation Claims do not arise from any of Defendants' Illinois-related or Illinois-directed activities.

Count Five asserts that the Sompo Entities commercially exploited "converted property." (Cplt. ¶¶297, 300) (stating "owners of property…wrongfully misappropriated or converted [permitted] to recover the unjust enrichment…reaped from using or commercially exploiting the converted property."). Because Plaintiffs are unable to establish facts sufficient to support personal jurisdiction over their claims for replevin, conversion or trover, it follows that they are also unable to establish facts sufficient to support personal jurisdiction over their claims that Defendants were

"unjustly enriched" by Sompo Japan's ownership of the Painting.

Count Seven for "Breach of Duty under Illinois Law to Refrain from Commercially Exploiting *Sunflowers*" similarly fails to plead facts that the Sompo Entities directed suit-related activities to Illinois. Nor does it appear that any such tort claim exists under Illinois law (especially when not tied to a copyright claim as addressed in *Taylor*).

Count Eight for "Slander of Title under Illinois Law" fails to plead the necessary facts to support suit-related minimum contacts in Illinois to confer jurisdiction. A cause of action for slander of title requires proof that (1) the defendant made a false and malicious publication, (2) the publication disparaged the plaintiff's title to property, and (3) the publication caused damages to the plaintiff. *Bozek v. Bank of Am., N.A.*, 2021 IL App (1st) 191978, ¶ 87, 191 N.E.3d 709, 726 (citing *Chicago Title & Trust Co. v. Levine*, 333 Ill. App. 3d 420, 424, 789 N.E.2d 769 (2002)). First, Plaintiffs fail to allege facts to support that the Sompo Entities made a false and malicious publication in Illinois. Without pleading jurisdictional *facts*, Plaintiffs' rote conclusion that all Sompo Entities "issued a public statement" that Sompo Japan owns *Sunflowers* that was "published in the State of Illinois" is insufficient (Cplt. ¶310). Plaintiffs fail to plead sufficient facts regarding the publication such as where or to whom such a statement was published. *Silha*, 807 F.3d at 174.

Most relevant here, however, the element of publication for slander of title also requires the alleged publication be both false and malicious. *Bozek*, 2021 IL App (1st) 191978, ¶ 87 (citing *Chicago Title & Trust Co*, 333 Ill. App. 3d at 424). To prove malice, "'a plaintiff must show that the defendant knew that the disparaging statements were false or that the statements were made with reckless disregard of their truth or falsity.'" *Roy Zenere Trucking & Excavating, Inc. v. Build Tech, Inc.*, 2016 IL App (3d) 140946, ¶ 49, 65 N.E.3d 340, 350 (quoting *Chicago Title & Tr. Co.*,

333 Ill. App. 3d at 424). However, "the law in Illinois is that if a party has reasonable grounds to believe that he had legal or equitable title or even a claim, then assertion of this claim does not amount to slander of title." *Roy*, 2016 IL App (3d) 140946, ¶ 49 (quoting *Midwest Glass Co. v. Stanford Dev. Co.*, 34 Ill. App. 3d 130, 135, 339 N.E.2d 274, 278 (1st Dist. 1975) (internal quotations omitted).

Here, Exhibit 3 to Plaintiffs' Complaint reflects Sompo Japan's reasonable grounds to believe it obtained legal title when it purchased the Painting at Christie's public auction in London in 1987. Exhibit 3 reflects that the seller warranted marketable title to *Sunflowers* as part of the sale ("The Seller" section under "Conditions of Business" states "The Seller [of the *Sunflowers* painting] warrants to Christie's [the auction house] and to the Buyer [Sompo Japan] that he is and will be able to transfer good and marketable title to the Lot free from all liens and encumbrances.") (Cplt. Ex. 3). When an exhibit attached to a complaint incontrovertibly contradicts the allegations made in the pleading, the exhibit controls. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (citing *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007)). Whatever the unknown statement purportedly said, Plaintiffs have failed to plead facts that Defendants made a false and malicious publication without reasonable grounds sufficient to support jurisdiction over the claim.

Important here, "'[s]lander of title' claims usually arise in the context of real property." *McDonald's Corp. v. Am. Motorists Ins. Co.*, 321 Ill. App. 3d 972, 988, 748 N.E.2d 771, 784 (2d Dist. 2001).[10] Only one Illinois court appears to have acknowledged that the tort of slander of title

---

[10] Plaintiffs also argue that the HEAR Act allows them to bring a claim for slander of title under Illinois law. (Cplt. ¶¶315-316). However, the HEAR Act explicitly states that its purpose is "[t]o provide the victims of Holocaust-era persecution and their heirs a fair opportunity to *recover* works of art confiscated or misappropriated by the Nazis" (PL 114-308), not create new causes of action for "slander" relating to statements made about the art.

24

could encompass other types of ownership interests other than of real property, and even then, chose not to find such a claim. *See Id.* at 784-85 ("We need not decide whether one may possess title to a trade secret. McDonald's allegations cannot survive because there is no explicit or implicit allegation that the content of McDonald's promotion contained a false misrepresentation.").[11] Thus, because none of Plaintiffs' twelve claims arise from any Sompo Entity's suit-related conduct in Illinois, specific personal jurisdiction cannot be conferred over them.[12]

## 2. The Court Lacks Specific Personal Jurisdiction Over Defendants Because their Conduct Is Not Targeted to Illinois.

For each of their claims, *none* of the four categories of Defendants' alleged conduct confers specific personal jurisdiction over them in Illinois.

### a. The sale of insurance in Illinois by entities other than the Defendants has no connection to Plaintiffs' claims and does not subject the Defendants to specific personal jurisdiction.

Contrary to Plaintiffs' allegations, Sompo Bermuda does not sell insurance in Illinois. (Sompo Bermuda Decl., ¶7). While an indirect subsidiary of Sompo Bermuda has an office in Chicago for the purpose of selling insurance (*Id.* ¶9), the U.S. Supreme Court has held that "a

---

[11] Furthermore, should Plaintiffs' claim of slander of title derive from a statement made relating to this litigation or in Defendants' pleadings filed with the Court, their claim would be barred because of Defendants' litigation privilege. In general, the defense of absolute privilege is available against both false light and slander of title claims. *Kurtz v. Hubbard*, 2012 IL App (1st) 111360, ¶ 11, 973 N.E.2d 924, 928. "The only requirement for the litigation privilege to apply 'is that the communication must pertain to proposed or pending litigation.'" *Bedin v. Nw. Mem'l Hosp.*, 2021 IL App (1st) 190723, ¶ 40, 187 N.E.3d 739, *appeal denied*, 184 N.E.3d 984 (Ill. 2022) (quoting *Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶ 19, 117 N.E.3d 238). Additionally, "[t]he [litigation] privilege applies to all communications made before, during, or after litigation" and applies "'regardless of the defendant's motive or the unreasonableness of his conduct.'" *Bedin*, 2021 IL App (1st) 190723, ¶ 40 (quoting *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 15, 7 N.E.3d 52, 56) .

[12] Plaintiffs' improper insinuations to other claims that were not brought cannot support personal jurisdiction in Illinois. *See, e.g.,* violating 15 U.S.C. § 45 (Cplt. ¶¶7, 95, 106(e), 270(c)); mail fraud under 18 U.S.C. § 1341 (Cplt. ¶¶7, 270(d)); wire fraud under 18 U.S.C. § 1343 (Cplt. ¶¶7, 270(e)); violation of the National Stolen Property Act, 18 U.S.C. § 2314 (Cplt. ¶¶6, 106(a)); violation of 18 U.S.C. § 1001 (Cplt. ¶¶6, 33, 106(b)); civil conspiracy (Cplt. ¶89(d)). Such baseless allegations unconnected to the claims actually brought must be ignored for purposes of determining whether specific personal jurisdiction exists over the Sompo Entities. *See Sifuna*, 2017 WL 5891224, at *1.

corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits <u>unrelated</u> to that activity.'" <u>Daimler</u>, 571 U.S. at 132 (quoting <u>Int'l Shoe Co.</u>, 326 U.S. at 318)). Specific jurisdiction over a corporate defendant is not appropriate unless its in-state activities are both "continuous and systematic" *and* give "rise to the liabilities sued on." <u>Daimler</u>, 571 U.S. at 126.[13] Sompo Bermuda does not have "continuous and systematic" activities in Illinois. Even if Plaintiffs could viably attribute to Sompo Bermuda its indirect subsidiary's alleged sale of insurance in Illinois, those activities have nothing to do with Plaintiffs' claims against Sompo Bermuda for replevin, conversion, trover, unjust enrichment or breach of duty arising out of (i) the acquisition of *Sunflowers* by a different Sompo entity (Yasuda) at public auction conducted by Christie's in London *over 36 years ago* (<u>Cplt.</u> ¶5) and (ii) the Beatty family's acquisition of *Sunflowers*, likely from Paris-based art dealer Rosenberg in 1934, who probably acquired it from Mendelssohn-Bartholdy, a German citizen, nearly *90* years ago in Europe (<u>Cplt.</u> ¶239). None of the alleged transactions leading to Sompo Japan's ownership of the Painting occurred in, or had anything to do with, Illinois. As such, Plaintiffs fail to establish the necessary connection between its claims against Sompo Bermuda or any of the other Sompo Entities and the sale of insurance in Illinois by entities other than Defendants.

> b.   <u>Defendants' general advertisements, social media and websites do not subject Defendants to specific personal jurisdiction.</u>

Plaintiffs assert that specific personal jurisdiction exists over Sompo Holdings and its

---

[13] Plaintiffs' citation to <u>Ford Motor Co. v. Montana Eighth Judicial Dist. Court</u>, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021) to argue specific jurisdiction over the Sompo Entities is mystifying. In that case, plaintiffs' product liability claim was based on Ford's systematic and pervasive marketing and distribution of *the product at issue* in the state where the plaintiffs' car accident occurred, causing injury. Plaintiffs also cite to <u>Curry v. Revolution Laboratories, LLC</u>, 949 F.3d 385 (7th Cir. 2020). (<u>Cplt.</u> ¶94). In *Curry*, the court found that the contacts with the forum state were suit-related because the sales by the defendant involved *the product at issue* in the action. *Id.*, 949 F.3d at 401. Neither *Ford* nor *Curry* lend support for a finding of specific jurisdiction over the Sompo Entities as any conversion of the Painting took place outside of the forum and any exploitation of the "image" was never targeted to Illinois, let alone to Plaintiffs in Illinois.

subsidiaries because of advertisements and social media that are not directed solely at, but are accessible to, Illinois consumers. (Cplt. ¶¶56, 84). Plaintiffs do not allege that Sompo Holdings conducts any business in Illinois, except for its advertising activities. (Cplt. ¶¶56, 69). While all engage in general advertisements, that conduct is insufficient to confer specific personal jurisdiction in Illinois.

"As a general rule, '**national advertisements are insufficient to subject a defendant to jurisdiction in Illinois**.'" *Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 737 (N.D. Ill. 2011) (quoting *Hot Wax, Inc. v. Stone Soap, Co.*, No. 97 C 6878, 1999 WL 183776, at \*4 (N.D. Ill. Mar. 25, 1999)). Without evidence that a corporation deliberately directed advertisements to Illinois, national – and international – advertisements do not support a contention that a corporation purposefully availed itself of the privilege of conducting activities in Illinois. *Id.* at 737-38.[14] Here, Plaintiffs do not allege that the Sompo Entities "deliberately directed advertisements to Illinois" to the exclusion of other states in the United States. Instead, Plaintiffs merely allege that, in October 2022, Sompo Holdings sponsored a one-page advertisement in *The Wall Street Journal*. (Cplt. ¶84). *The Wall Street Journal* is a national publication, and its articles are available and accessible via the Internet nearly everywhere in the U.S. Plaintiffs' claim that

---

[14] Plaintiffs cite *Kukovec v. Estee Lauder Companies, Inc.*, 22 CV 1988, 2022 WL 16744196, at \*4 (N.D. Ill. Nov. 7, 2022) for the proposition that specific jurisdiction over a company exists when it sells products in Illinois and employs a website that is nationally accessible. The alleged violation in *Kukovec* was the capturing of facial geometry through defendant's website using a virtual try-on tool. The court stated that the tool's "only purpose" was to sell and market the defendant's products. *Kukovec*, 2022 WL 16744196, at \*4. Plaintiffs' allegation that Defendants converted *Sunflowers* does not relate in any way to the purported sale of insurance in Illinois. Thus, *Kukovec* does not aid Plaintiffs in establishing personal jurisdiction over the Sompo Entities. *Compare* with *King v. PeopleNet Corp.*, 21 CV 2774, 2021 WL 5006692, at \*7 (N.D. Ill. Oct. 28, 2021) (defendant's software collected Illinois customer's biometric information which sufficiently plead "suit-related" contacts with the state) and *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 588 (N.D. Ill. 2021) (plaintiff plead that two companies used his name, identity, image, and likeness to advertise and solicit for the company's paid products and services in Illinois without the plaintiff's consent) also cited by Plaintiffs.

specific personal jurisdiction exists because these advertisements are merely accessible in Illinois, as opposed to expressly targeted and relate to the claims at issue, simply fails. *Eco Pro*, 807 F. Supp. 2d at 737.

Plaintiffs' allegations that Sompo Holdings' and Sompo Bermuda's websites are accessible in Illinois are not sufficient to confer specific personal jurisdiction over them because to do so would offend traditional notions of fair play and substantial justice. (Cplt. ¶¶81-83, 84). The Seventh Circuit has so held: "Having an 'interactive website'… should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible. To hold otherwise would offend 'traditional notions of fair play and substantial justice.'" *Advanced Tactical*, 751 F.3d at 803 (quoting *Int'l Shoe*, 326 U.S. at 316). Sompo Holdings' and Sompo Bermuda's respective websites, which are accessible internationally via the Internet, are not a sufficient basis to confer specific personal jurisdiction over them in Illinois. *Id*.

    c.    Use of the *Sunflowers* image in advertisements or websites to reflect a "core identity" and "brand" does not confer specific personal jurisdiction in Illinois.

        (i)    *Plaintiffs' claims relate to the physical Painting.*

Plaintiffs' claims are grounded in acts directed at the Painting — a physical object created by Vincent Van Gogh. The only action allegedly directed to Illinois involving the physical object was the loan of *Sunflowers* to the Art Institute of Chicago and its brief display during the Exhibition in 2001. For reasons discussed below — including that the Exhibition is an isolated event that occurred 22 years ago, well after any purported transfers of ownership, and without any demand by Plaintiffs for return of the Painting having been made — none of the twelve Counts of the Complaint arise out of the Sompo Entities' activities in Illinois.

Plaintiffs assert that the Sompo Entities' advertisements and websites embody an association with an *image* of *Sunflowers* and various claims of social responsibility and "caring";

28

however, such claims are not sufficiently related to Plaintiffs' claims to confer specific personal jurisdiction in Illinois. Any allegation that the Sompo Entities have described themselves as socially responsible is unrelated to their alleged exercise of control over the Painting. Likewise, use of an image of *Sunflowers* does not relate to the conversion or exploitation of the Painting and therefore cannot be the basis of a claim of specific personal jurisdiction.

Conversion involves the improper exercise of dominion and control over *a physical object*. Use of ***the image*** of *Sunflowers* is in no way related to dominion, control or exploitation of the physical embodiment constituting the Painting and therefore cannot provide the basis for personal jurisdiction over Defendants. *See* 17 U.S.C. § 202 (ownership of copyright or any of exclusive rights under a copyright is distinct from ownership of material object embodying the copyrighted work). The fact that the image of *Sunflowers* has long been in the public domain negates any assertion that the Sompo Entities' portrayal thereof in its general advertisements cannot support specific personal jurisdiction over them in Illinois.

        (ii)      *The Sompo Entities' alleged use of the Sunflowers image is not suit-related or Illinois-focused activity.*

Plaintiffs' 117-page Complaint never mentions the U.S. Copyright Act. This silence is striking, given the plethora of allegations of improper use and exploitation of the pictorial *image* of *Sunflowers* in an attempt to secure jurisdiction here.[15] Plaintiffs' reticence is understandable, **for the *Sunflowers* work is in the public domain** and free for all—including the Sompo Entities—to use. Because the pictorial image of *Sunflowers* (as distinct from the physical object)

---

[15] For example, *see* (Cplt. ¶5) ("S*unflowers* presented . . . opportunity to burnish its corporate image with the unique luster of both the iconic Painting and its gifted artist."); (Cplt. ¶¶9, 25, 119, 242) (Sompo Japan "making *Sunflowers* an emblem of its collective corporate identity"); (Cplt. ¶85) ("Once interested persons – including prospective Illinois insurance consumers – access the website of Sompo Holdings they encounter *Sunflowers* and the same narrative and materials that prospective clientele of Sompo International experience, as discussed above.").

is in the public domain, any attempt to restrict use of the image would be prohibited under the Copyright Act let alone the fact that the Sompo Entities use of the image in a manner accessible to consumers in Illinois cannot confer personal jurisdiction here.[16]

"Copyright protection subsists in… original works of authorship fixed in any tangible medium of expression…." 17 U.S.C. § 102(a).[17] But of great importance here, copyright law also protects those vast creative commons of works which are no longer subject to the assertion of exclusive rights. *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 676 (7th Cir. 1986) (if a work fits into "one of the general subject matter categories of Section 102 and 103," states cannot regulate it even if the work fails to achieve federal copyright protection). Created in 1889, *Sunflowers* has now been in that public domain since at least 1960.[18] Thus, all—including the Sompo Entities—are free to make use of the *Sunflowers* **image**—and free to copy it, free to distribute copies, free to display the image and free to create derivative works of the image.

---

[16] Furthermore, there is no subject matter jurisdiction over Plaintiffs' claim because the use of the *Sunflowers* image, which is in the public domain, cannot support an injury-in-fact based on Plaintiffs' claimed ownership of *Sunflowers*. *See Silha*, 807 F.3d at 173 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992); *see also Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 578, n8 (N.D. Ill. 2020) ("a plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss."); *Thrasher-Lyon*, 861 F. Supp. 2d at 908.

[17] Pictorial, graphic and sculptural works are among the categories of works protected by copyright. 17 U.S.C. § 102. Owners of copyright enjoy the right to reproduce, prepare derivative works, distribute, perform publicly, and display. 17 U.S.C. § 106. Copyright law distinguishes between the work's physical embodiment (*e.g.*, the painting on the wall) and the work embodied in the physical medium (the original selection of line and color), the latter being the subject of copyright protection. *See*, 17 U.S.C. § 202; *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 413 (7th Cir. 1992).

[18] Copyright law is territorial and here foreign parties are litigating over a work that was originally created and published outside the United States (*i.e.*, in France); accordingly, the *Berne Convention* applies. *See* The *Berne Convention for the Protection of Literary and Artistic Works*, https://www.wipo.int/wipolex/en/text/283698. Under the *Berne Convention*, a signatory to the Convention will apply its own law; *See*, *WIPO Guide to the Berne Convention* (1978), https://www.wipo.int/edocs /pubdocs/en/copyright/615/wipo_pub_615.pdf; and 7 Patry on Copyright § 23.21; However, under any possibly applicable law (*e.g.*, U.S., U.K, France, Germany, Japan), the copyright in the *Sunflowers* painting has long expired. *See* https://en.wikipedia.org/wiki/List_of_countries%27_copyright_lengths; and https://commons.wikimedia.org/wiki/File:World_copyright_terms.svg

Plaintiffs' claims to ownership of the Painting cannot diminish the right of the public—including the Sompo Entities—to use the public domain image of the Painting. *See, e.g.*, <u>Bridgeman Art Library, Ltd. v. Corel Corp.</u>, 36 F. Supp. 2d 191, 195 (S.D.N.Y. 1999) ("exact photographic copies of public domain works of art are not copyrightable under [U.S.] law because they are not original").

As it stands, because any copyright claims are non-existent (and conversion claims do not lie for images), Plaintiffs are left the impossible task of shoe-horning their request for a recovery based on use of the *image* through claims directed to conversion and exploitation of the *physical object*. The fact that any Sompo Entity's *lawful* use of the *Sunflowers* image for branding purposes may be visible to someone in Illinois simply cannot confer personal jurisdiction over Defendants for Plaintiffs' causes of action. *See* <u>Eco Pro,</u> 807 F. Supp. 2d at 737.

In addition to insurmountable challenges as relates to personal jurisdiction, the Supreme Court's decision in <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 33-34 (2003) forecloses exactly these types of efforts to control use of copyrightable works in the public domain. Dastar acquired a television series that fell into the public domain. Dastar modified the series a bit – including by altering the credit page – and then went to market. Fox (who owned the series but failed to renew the copyright) and a few other licensees sued for reverse passing off under § 43(a) of the Lanham Act – for essentially using the Fox series (now in the public domain) without attribution to Fox. In rejecting Fox's claims, *Dastar* held that requiring attribution to the original author as a condition of using a public domain work would create "a species of mutant copyright law that limits the public's federal right to copy and to use expired copyrights" (<u>Id.</u> at 34) by extending exclusive rights accorded under the Copyright Act (for a limited term and under defined conditions) into the free zone of the public domain. Plaintiffs' claim here is in effect no different than Fox's claims rejected in *Dastar*, if not weaker: in claiming concealment of the "true owners"

31

of *Sunflowers*, Plaintiffs here are seeking to condition use of a public domain work on attribution of ownership of the physical object embodying it. *Dastar* does not require attribution to the author, and it certainly does not require attribution to the owner of the physical work.[19]

> d. The isolated 2001 Exhibition of *Sunflowers* at the Art Institute of Chicago is not sufficiently linked to Plaintiffs' claims to subject Defendants to specific personal jurisdiction.

Plaintiffs argue that the Art Foundation's alleged "unity of interest" with Sompo Holdings in the brief public display of *Sunflowers* at the Art Institute of Chicago more than 22 years ago (September 22, 2001 – January 13, 2002) is sufficient to create personal jurisdiction over them. (Cplt. ¶89(a)). That temporary display for 3 ½ months cannot confer personal jurisdiction over Sompo Japan or the Art Foundation (let alone any another Sompo Entity).[20]

The recent case of *Eli Barzilai, et. al. v. Israel Museum*, No. 153086/2022, 2022 WL 16856131 (N.Y. Sup. Ct. Nov. 10, 2022) is instructive. In *Israel Museum,* the court dismissed a complaint, in part, for lack of personal jurisdiction. There, plaintiffs sued the Israel Museum for replevin and conversion in New York State court to recover the Birds' Head Haggadah ("Haggadah") that had been in their family's possession until the Nazis came to power in Germany.

---

[19] As the *Dastar* Court stated: "The right to copy, and to copy without attribution, once a copyright has expired, like 'the right to make [an article whose patent has expired]—including the right to make it in precisely the shape it carried when patented—passes to the public.' *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 230, 84 S.Ct. 784 (1964)." *Id.* at 33. Of further significance is the fact that any party that would conceivably be affected by Defendants' use of the images (e.g., customers, potential customers and commercial partners) are not plaintiffs in this action and, as discussed above, to the extent Plaintiffs seek recovery for such claims, Plaintiffs lack standing to make such claims and, accordingly, this Court lacks subject matter jurisdiction to adjudicate them.

[20] *Sunflowers* entered the United States pursuant to 22 U.S.C. § 2459. The United States Department of State's (the "State Department") Federal Register Public Notice 3726 determined that the objects for the exhibit at the Art Institute of Chicago in 2001 were "imported from abroad for the temporary exhibition without profit within the United States, are of cultural significance." A true and correct copy of the Department of State's Public Notice 3726 is attached hereto as Exhibit E, for which this Court can take judicial notice. "Documents published in the Federal Register are proper for judicial notice." *Eidmann v. Walgreen Co.,* 522 F. Supp. 3d 634, 641 (N.D. Cal. 2021); *see* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed").

*Id.* at 1. Plaintiffs there claimed that the Haggadah was stolen from the family's apartment in Germany. *Id.* at 2. The Israel Museum acquired the Haggadah in Israel in 1946. *Id.* at 2. Plaintiffs argued that, from September 1988 to January 1989, the Haggadah was displayed in the New York Public Library, and that the Israel Museum conducts business in New York. *Id.* at 4. In rejecting the plaintiffs' argument, the court determined that the Israel Museum's business activities in New York did not subject it to personal jurisdiction there because the plaintiffs failed to satisfy New York's long arm statute's requirement that the business transacted must have a substantial relationship with the claim asserted. *Id.* at 6. The court determined that the plaintiffs' alleged claims for replevin and conversion "arose out of a theft and subsequent sale far away from New York," and that this was not substantially related to whatever business dealings the Israel Museum may have engaged in within New York. *Id.* at 6-7. As in the case of *Israel Museum,* the Sompo Art Foundation's work and Sompo Japan's loan to the Art Institute of Chicago for the limited public display of the Painting over 22 years ago is insufficient to confer jurisdiction over any Sompo Entity today.

The issue presented here is also similar to that addressed in *Graff,* 342 F. Supp. 3d 819 (N.D. Ill. 2018). There, the court addressed the tort of conversion in the context of determining whether specific personal jurisdiction could be found in Illinois over a Phoenix-based pawn shop (Biltmore) that possessed a painting allegedly stolen by Graff's wife and brought into the Arizona shop. *Id.* at 821-22. Graff and his former spouse resided in Texas, not in Illinois, and nothing suggested that Biltmore knew that Graff would potentially be injured in Illinois when it took dominion and control of certain paintings in Arizona or, even under Graff's theory, when it attempted to sell certain paintings through an auction held in Illinois. *Id.* at 826 (citing *Sunny Handicraft (H.K.) Ltd. v. Edwards,* No. 16 C 4025, 2017 WL 1049842, at *6 (N.D. Ill. Mar. 20,

33

2017) (finding that plaintiffs could not establish personal jurisdiction for tort claims where no evidence existed that defendants had knowledge that plaintiffs would be injured in Illinois)). The court further held that "Graff's argument of injury in Illinois rings especially hollow because one of the paintings did not sell at auction and instead was returned to Biltmore in Arizona, meaning that Graff's argument for personal jurisdiction over the conversion claim for that painting fails." *Id*. at 826. "Therefore, because the conversion at issue occurred prior to the auction that took place in Illinois, any connections between Biltmore and Leslie Hindman related to the subsequent auction of the paintings do not aid Graff in establishing personal jurisdiction over Biltmore for the conversion claims." *Id*. The court also found that Biltmore had insufficient contacts with Illinois because the underlying conduct — Biltmore's receipt of the paintings from Graff's former spouse in Arizona, and its subsequent assumption of possession of those paintings once she defaulted on her loans from Biltmore — had *no* connection to Illinois. *Id*. at 826-27. The court dismissed for lack of jurisdiction Graff's claims of replevin and unjust enrichment because Graff did not establish that Biltmore had any knowledge that these sales would harm Graff in Illinois, since Graff resides in Texas and has no apparent connection to Illinois. *Id*. (citing *Tamburo*, 601 F.3d at 701).

Here, the limited exhibition of *Sunflowers* in Illinois is comparable to the temporary passing of the allegedly converted painting for an auction before it was returned to Arizona examined in *Graff*. *Id*. at 826. Plaintiffs' demand for possession (this suit) over 22 years after *Sunflowers* was temporarily in Illinois will not confer specific personal jurisdiction over the Sompo Entities. None of the Plaintiffs ever resided in Illinois, let alone raised any claim to ownership of *Sunflowers* with Sompo Japan during the Exhibition. Lacking facts that the Sompo Entities engaged in Illinois-targeted conduct aimed at harming Plaintiffs *in Illinois*, Plaintiffs fail to

34

adequately plead that specific personal jurisdiction exists over Defendants.

### 3. Illinois' Exercise of Personal Jurisdiction Over Defendants Would Not Comport with Traditional Notions of Fair Play and Substantial Justice.

The Due Process Clause forbids a situation that would violate "'traditional notions of fair play and substantial justice.'" _Rogers v. City of Hobart, Indiana_, 996 F.3d 812, 820 (7th Cir. 2021) (quoting _Felland v. Clifton_, 682 F.3d 665, 677 (7th Cir. 2012)). This third and final requirement for specific personal jurisdiction "'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person.'" _be2 LLC v. Ivanov_, 642 F.3d 555, 558 (7th Cir. 2011) (quoting _Burger King Corp. v. Rudzewicz_, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985)). For this final requirement, courts analyze the following factors: "[1] the inconvenience to the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies." _Rogers_, 996 F.3d at 819. "The Due Process Clause thus provides a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." _Id_.

Here, the first factor, inconvenience to the defendants, weighs heavily against exercising specific personal jurisdiction over the Sompo Entities. Sompo Holdings, Sompo Japan and the Art Foundation are headquartered in Tokyo, Japan. (Sompo Holdings Decl., ¶¶3, 7); (Sompo Japan Decl., ¶3); (Art Foundation Decl., ¶¶3, 4). Sompo Bermuda is a foreign corporation with its principal place of business in Bermuda. (Sompo Bermuda Decl., ¶3). Sompo Bermuda lacks any physical presence in the United States. (_Id_. ¶6). Sompo Bermuda does not do any business in the

United States. (*Id.* ¶7). Moreover, the exercise of jurisdiction over the Sompo Entities in this case would impose a significant burden on them. *See Labtest Int'l, Inc. v. Ctr. Testing Int'l Corp.*, 766 F. Supp. 2d 854, 864 (N.D. Ill. 2011) ("The exercise of jurisdiction over [defendant] by an Illinois court would impose a significant burden on [defendant], as its Shenzhen headquarters is located nearly 8,000 miles from Chicago."); *see also Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 580 F. Supp. 2d 694, 701 (N.D. Ill. 2008) (Of all the factors, "courts have recognized that the "burden on the defendant forced to litigate in a foreign forum is still the primary concern.").

The second factor, bearing on the forum state's interest in adjudicating the dispute, also favors dismissal here. The alleged injuries serving as the basis for the Complaint concern the ownership and alleged "commercial exploitation" of *Sunflowers*. Only Sompo Japan was involved with the acquisition of the Painting. (Sompo Japan Decl., ¶8); *see* (Sompo Holdings Decl., ¶8); *see* (Sompo Bermuda Decl., ¶10); (Art Foundation Decl., ¶13). There is no potential for any Illinois residents to have been harmed in any way by an acquisition of *Sunflowers* in London at public auction *over 36 years ago*, particularly where, as here, the Painting has been on public display in Tokyo for nearly the same number of years and was only in Illinois for 3 ½ months *22 years ago*. *See Labtest*, 766 F. Supp. 2d at 864 ("[T]he alleged acts serving as the basis for the complaint occurred in China, and because the allegedly infringing conduct either never occurred in the United States or is no longer occurring, there is no potential for Illinois residents to be harmed.").

The third factor, relating to Plaintiffs' interests in obtaining convenient and effective relief, also favors dismissal here. This Court has previously held this factor does not support reasonableness when **"[t]he plaintiff, defendant, most, if not all witnesses, and documentary evidence are located outside Illinois**." *Hot Wax, Inc.*, 1999 WL 183776, at *7 (emphasis added). Plaintiffs are not residents of Illinois. Schoeps is a citizen and resident of Germany (Cplt. ¶19),

36

Enhoerning is a dual citizen of Sweden and the United States, residing in Sweden (Cplt. ¶20), and Kesselstatt is a resident of Germany (Cplt. ¶21). Further, Sompo Japan's acquisition of *Sunflowers* in London at public auction certainly had nothing to do with the future Exhibition at the Art Institute of Chicago 14 years later. Any witnesses with information relevant to the alleged transfers of the Painting from 1934 to 1987 would either be deceased or located in Germany, France, England or elsewhere in Europe. (Cplt. ¶5). All other witnesses regarding Sompo Japan's acquisition, ownership and display of *Sunflowers* at the Sompo Museum of Art are either no longer living or are located in Japan. (Sompo Japan Decl., ¶11).

The fourth factor, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, weighs in favor of dismissal here. Illinois has no interest in resolving this controversy, as the alleged events giving rise to Plaintiffs' claims have no connection to Illinois. This Court has previously held there is no judicial interest in "a state where the injury did not occur." *Hot Wax,* 1999 WL 183776, at *7. Plaintiffs cannot plausibly plead that any of the Sompo Entities could have predicted that they would be haled into an Illinois court and subject to suit over Sompo Japan's ownership of *Sunflowers* to satisfy the Due Process Clause.

## B. Illinois' Long-Arm Statute Does Not Confer Personal Jurisdiction Over Defendants.

### 1. Defendants Are Not Subject to Personal Jurisdiction Under 735 ILCS § 5/2-209(a)(2).

Plaintiffs further argue the Sompo Entities are subject to personal jurisdiction under Illinois' long-arm statute – 735 ILCS § 5/2-209(a)(2). (Cplt. ¶100). Section 209(a)(2) permits jurisdiction over a non-resident of Illinois if a cause of action arises from "the commission of a **tortious act within this State**." (emphasis added). A "'key operative factor for determining the locus of the tort is the place where the plaintiff sustained its injury.'" *TY, Inc. v. Sullivan*, 01 C 1604, 2002 WL 500663, at *2 (N.D. Ill. Mar. 12, 2002) (quoting *Habitat Wallpaper & Blinds, Inc.*

37

*v. K.T. Scott Ltd. Partnership*, 807 F. Supp. 470, 473 (N.D. Ill. 1992)).

Here, Sompo Japan's acquisition of *Sunflowers* occurred at public auction held in London in 1987 (Cplt. ¶5) and dominion over the Painting occurred in Japan (Sompo Japan Decl., ¶¶8, 10); (Art Foundation Decl., ¶13). Further, Plaintiffs are not residents of Illinois, nor do they have any other connection to Illinois. This means any possible injury resulting from the torts that Plaintiffs proffer would not have been sustained in Illinois. Therefore, Section 5/2-209(a)(2) will not confer jurisdiction over the Sompo Entities for Plaintiffs' tort claims.[21]

## 2. Defendants Are Not Subject to Personal Jurisdiction Under 735 ILCS § 5/2-209(a)(1).

Plaintiffs also argue that the Sompo Entities are subject to personal jurisdiction in Illinois based on 735 ILCS § 5/2-209(a)(1). (Cplt. ¶108). Section 209(a)(1) permits jurisdiction over a non-resident of Illinois *if a cause of action arises from* "the **transaction of any business** within this State" (emphasis added). Plaintiffs allege that Defendants engaged in commercial wrongdoing when (1) Sompo Japan brought *Sunflowers* to Illinois, had it displayed at the Art Institute of Chicago, and (2) Sompo Entities display *Sunflowers* on one of their websites, which is accessible to consumers in Illinois. (Cplt. ¶109). Plaintiffs are wrong. First, the public notice by the State Department regarding the 2001 exhibit of *Sunflowers* at the Art Institute of Chicago expressly states that *Sunflowers* was imported for the display "without profit". *See* Exhibit E hereto; (Sompo Japan Decl., ¶¶15, 16). Second, the display of *Sunflowers* on a Sompo Entity website cannot be a basis for a claim because the *Sunflowers* image is in the public domain and that allows anyone – including the Sompo Entities – to use it as they see fit. *See, e.g., Bridgeman*, 36 F. Supp. 2d at 195

---

[21] Additionally, Plaintiffs allege that under Section 5/2-209(a)(2), Defendants are subject to personal jurisdiction in Illinois because they are "[f]raudulently concealing from the Mendelssohn heirs their claim to recover the Painting under the law of prescription in Japan." (Cplt. ¶106(i)). Plaintiffs' allegation makes no sense. Any defense Sompo Japan can raise in a Japanese proceeding simply cannot give rise to jurisdiction over Sompo Japan *in Illinois*.

(no violation for use of public domain works). Third, none of the Plaintiffs allege interacting with Sompo Entities' websites while in Illinois.[22] Consequently, Section 209(a)(1) of Illinois' Long-Arm Statute does not support Plaintiffs' attempt to obtain personal jurisdiction over Defendants.

### 3. Defendants Are Not Subject to Personal Jurisdiction Under 735 ILCS § 5/2-209(a)(4).

Last, Plaintiffs argue that the Sompo Entities are subject to personal jurisdiction in Illinois based on 735 ILCS § 5/2-209(a)(4). (Cplt. ¶111). Section 209(a)(4) permits jurisdiction over a non-resident of Illinois if a cause of action arises from "[c]ontracting to insure any person, property or risk located within this State at the time of contracting." Here, Plaintiffs' claims are for the conversion and exploitation of *Sunflowers* and do not arise out of their *purchase of insurance* from any Sompo Entity for property or risk located within Illinois. Accordingly, Section 2-209(a)(4) has no bearing on this matter and cannot confer jurisdiction over the Sompo Entities.

## III. ALTERNATIVELY, THE COURT SHOULD DISMISS THE COMPLAINT PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS*

The Complaint is also subject to dismissal pursuant to the common law doctrine of *forum non conveniens*. "The common law doctrine of *forum non conveniens* allows a federal district court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and the ends of justice." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009) (citing *Clerides v. Boeing Co.*, 534 F.3d 623, 627–28 (7th Cir. 2008)). The Seventh Circuit has held that "a court need not decide whether it has personal jurisdiction over the defendant before dismissing for *forum non conveniens*." *Amling v.*

---

[22] Plaintiffs cite to *Kalata v. Healy*, 312 Ill. App. 3d 761, 728 N.E.2d 648 (1st Dist. 2000) to argue that personal jurisdiction exists under 735 ILCS § 5/2-209(a)(1). In *Kalata,* the court held that "[a] plaintiff's claim must be one that lies in the wake of commercial activities by which the defendant submitted to the jurisdiction of Illinois courts." *Id.* at 767. Here, none of Plaintiffs' Conversion or Exploitation Claims arise from Defendants' commercial activities *in Illinois.*

39

*Harrow Indus. LLC*, 943 F.3d 373, 379 (7th Cir. 2019) (citing *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431,127 S. Ct. 1184, 1191 (2007)). Thus, the Court may make this determination before analyzing personal jurisdiction.

"Two conditions must be met under the doctrine of *forum non conveniens*: (1) there must exist an alternative forum that has jurisdiction over the case that is both available and adequate, and (2) the balance of relevant private and public interests must weigh in favor of dismissal." *GoldenTree Asset Mgmt. LP*, 64 F. Supp. 3d at 1192. "Dismissal is proper if the chosen forum would impose 'oppressiveness and vexation to a defendant' that is 'out of all proportion to plaintiff's convenience.'" *Id*. (citing *Clerides*). In *GoldenTree*, the court balanced the private and public interests implicated by the location of the forum for the dispute and held that plaintiff's choice of Illinois was outside its own home forum, the "risk that the chosen forum really has little connection to the litigation is greater…." *Id*. at 1194 (The court expressed "skepticism about the role 'convenience' played in the plaintiff's choice of forum that has no connection whatsoever to the substantive events at issue in the lawsuit…."). The *GoldenTree* court found that most significant in balancing private interests is the "attendance of witnesses" and in that case, the most critical witnesses were in Germany. *Id*. at 1195. Ultimately finding that Germany would have easier access to proof, decrease costs, and do more to ensure the availability of witnesses, the *GoldenTree* court found the private factors to weigh in favor to dismissing the action. *Id*. (also finding that the public factors relevant to *forum non conveniens* inquiry "tilts the scale even more decisively in favor of Germany and away from Illinois"). Finally, the court held that there was no interest in favor of "unduly burdening Chicago-area citizens with jury duty for a case entirely unrelated to their home forum" – with no localized controversy in Illinois. *Id*. at 1196-97.

In this matter, Japan is the appropriate forum to hear this dispute. In *U.S.O. Corp. v. Mizuho*

*Holding Co.*, 547 F.3d 749, 750 (7th Cir. 2008), the Seventh Circuit held that when "[m]ost of the alleged bad acts were committed in Japan by Japanese persons and almost all the witnesses and documents are there," the case should be dismissed based on *forum non conveniens*. The owner of *Sunflowers* is located in Japan. (Sompo Japan Decl., ¶¶3, 9). Most of the key witnesses to Yasuda's acquisition of the Painting are either deceased or located in Japan, along with any relevant documents. (Sompo Japan Decl., ¶11). As the Seventh Circuit noted, "[d]ragging all those witnesses and documents from Japan to Chicago, supplying interpreters for the witnesses and translators for the documents, and conducting a trial largely on the basis of testimony given through interpreters and of documents translated from their original language, would impose unreasonable burdens not only on the defendants but also on the district court." 547 F.3d at 751.

### A.    Japan Is An Available And Adequate Forum.

Japan offers Plaintiffs an available forum to adjudicate their claims. "A proposed alternative forum is considered available if 'all of the parties are amenable to process and are within the forum's jurisdiction.'" *GoldenTree*, 64 F. Supp. 3d at 1192 (quoting *Stroitelstvo,* 589 F.3d at 421). Jurisdiction would exist over Sompo Holdings, Sompo Japan, and the Art Foundation in Japan. (Sompo Holdings Decl., ¶3); (Sompo Japan Decl., ¶3); (Art Foundation Decl., ¶4); (Kanno Decl., III.A[23]). Sompo Bermuda agrees to consent to jurisdiction in Japan as a condition of *forum non conveniens* dismissal. Further, the Tokyo District Court in Japan will have jurisdiction over Sompo Bermuda if Plaintiffs file their claims there against all Defendants. (*see* Kanno Decl., III.B). Though Plaintiffs are not from Japan, the forum is no less convenient than Illinois as *none* of Plaintiffs are citizens of Illinois. Thus, Japan is an available forum under the

---

[23] The Sompo Entities provide the Declaration of Hon. Hiroyuki Kanno, former Justice of the Supreme Court of Japan, to explain how the Japanese court system would provide Plaintiffs and Defendants with an adequate and available forum to resolve this dispute. (Decl. of Hon. Hiroyuki Kanno (retired), as Exhibit F hereto ("Kanno Decl.")).

41

doctrine of *forum non-conveniens*.

Japan also offers Plaintiffs an adequate forum to adjudicate their claims. The determination "[a] forum is adequate [is] if 'it provides the plaintiff with a fair hearing to obtain some remedy for the alleged wrong.'" *GoldenTree*, 64 F. Supp. 3d at 1192. "'Adequacy' does not require 'equivalency,' however. The forum's legal remedies need not be 'as comprehensive or as favorable as the claims a plaintiff might bring in an American court.'" *Id*. The U. S. Supreme Court has held "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247 (1981). Moreover, "[a] forum is not inadequate merely because its law is less favorable to the plaintiff." *Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 359 (7th Cir. 2022) (citing *Deb v. SIRVA, Inc.*, 832 F.3d 800, 807 (7th Cir. 2016); *Abad v. Bayer Corp.*, 563 F.3d 663, 667 (7th Cir. 2009)).

The Seventh Circuit has previously determined that Japan can be an adequate forum: "[i]n Japan, the trial itself blends the American trial equivalent with the American discovery equivalent." *U.S.O. Corp.*, 547 F.3d at 754. Japanese courts recognize "civil causes of action for damages (*e.g.*, breach of contract, intentional tortious act, and unjust enrichment)." *U.S.O. Corp. v. Mizuho Holding Co.*, 06 C 0459, 2007 WL 2893628, at *3 (N.D. Ill. Sept. 27, 2007). Furthermore, "[t]ort claims are cognizable under Japanese law, and Japanese courts award damages for harm to property and economic losses." *Imamura v. Gen. Elec. Co.*, 371 F. Supp. 3d 1, 9 (D. Mass. 2019), *aff'd*, 957 F.3d 98 (1st Cir. 2020). While Japanese law does not provide identical causes of action as alleged here, the following claims are available to Plaintiffs in Japan: (1) a claim for return of the Painting based on ownership, (2) claim for damages based on tort, and (3) claim for return of the benefit based on unjust enrichment (Kanno Decl., IV.B.1-3). Should

Plaintiffs prove their claims, Japanese courts may provide Plaintiffs relief. (Kanno Decl., V).

Lastly, the Seventh Circuit has recognized that the "investigatory powers of judges in a civil law system [such as Japan] are great." *U.S.O. Corp.*, 547 F.3d at 753-54. (Kanno Decl., II.B.6-7). In *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764 (9th Cir. 1991), the Ninth Circuit also determined that Japan was an adequate forum even though Japanese discovery procedures are not identical to those in the United States. *Id.* at 768 (further, the lack of jury trials in Japan does not render Japanese courts an inadequate forum). (Kanno Decl., III.C). There should be little debate that Japanese courts provide both an available and adequate forum for this dispute.

### B. The Private Interest Factors Compel Dismissal.

Because Japan is both an available and adequate forum, this Court must balance "private and public interest factors." *Piper*, 454 U.S. at 257. The Seventh Circuit has held that the private interest factors to be considered are: "(1) relative ease of access to sources of proof; (2) availability of compulsory process and costs for attendance of witnesses; (3) possibility of viewing the premises, if appropriate; and (4) other practical issues, including the ease of enforcement of any ultimate judgment." *Instituto Mexicano del Seguro Soc.*, 29 F.4th at 359. The "strong presumption" that a plaintiff has chosen a convenient forum weakens where, as here, the plaintiff is not a United States citizen or resident. *Piper*, 454 U.S. at 255-56, 265. "[M]ost significant in balancing private interests is the attendance of witnesses." *GoldenTree*, 64 F. Supp. 3d at 1195. The *GoldenTree* court noted that, when many potential witnesses are employees of one party, this normally suggests "less difficulty in compelling corporate witnesses to testify." *Id.* Most of the witnesses, including the key witnesses regarding the acquisition of *Sunflowers*, are either no longer living or located in Japan or in Europe, but certainly *not* in Illinois. Therefore, the private interest factors weigh heavily in favor of Japan's courts as the proper forum for this dispute.

43

### C.    The Public Interest Factors Compel Dismissal.

The public interest factors are: (1) the administrative difficulties stemming from court congestion; (2) the local interest in having localized disputes decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Instituto Mexicano del Seguro Soc.*, 29 F.4th at 360. There is no localized controversy here because any alleged conversion of *Sunflowers* took place in either Germany, France, England or elsewhere in Europe – wherever the transfer of the Painting from Mendelssohn-Bartholdy, likely to Rosenberg and ultimately, to Edith Beatty, occurred – or in London, where Sompo Japan (as Yasuda) acquired *Sunflowers* at Christie's in 1987. (Cplt. ¶5). And the Painting has been displayed *in Japan* for nearly all of the last *36 years*. (Sompo Japan Decl., ¶19). The public interest factors favor dismissal here. *GoldenTree*, 64 F. Supp. 3d at 1196.

The Seventh Circuit has previously held that "if the plaintiff is suing far from home, it is less reasonable to assume that the forum is a convenient one." *In re Factor VIII or IX Concentrate Blood Products Litig.*, 484 F.3d 951, 956 (7th Cir. 2007). The "risk that the chosen forum really has little connection to the litigation is greater." *Id*. Schoeps is a German citizen residing in Berlin. (Cplt. ¶19). Kesselstatt resides in Munich. (Cplt. ¶21). Enhoerning is a dual citizen of Sweden and the United States, residing in Sweden. (Cplt. ¶20). Thus, it is not reasonable to assume the Illinois forum is convenient for Plaintiffs either. The private and public interest factors under a *forum non conveniens* analysis strongly favor dismissal of this case. Should the Court not dismiss the Complaint for lack of standing or for lack of specific personal jurisdiction over Defendants, the Court should dismiss this action pursuant to the doctrine of *forum non conveniens*.

44

## CONCLUSION

For all of the foregoing reasons, the Sompo Entities respectfully request that the Court grant their Motion to Dismiss.

<div style="margin-left: 40%;">

Respectfully submitted,

**SOMPO HOLDINGS, INC.,**
**SOMPO INTERNATIONAL HOLDINGS,**
**LTD., SOMPO FINE ART FOUNDATION, and**
**SOMPO JAPAN INSURANCE INC.,**
**Defendants**

By:    */s/ Daniel T. Graham*
        One of their Attorneys

</div>

Daniel T. Graham (ARDC No. 6203811)
Priscilla Singer (ARDC No. 6307021)
Jeffrey M. Sniadanko (ARDC No. 6331532)
Melissa E. Garcia (ARDC No. 6342000)
CLARK HILL PLC
130 East Randolph Street, Suite 3900
Chicago, Illinois 60601
Telephone: (312) 985-5900
dgraham@clarkhill.com
psinger@clarkhill.com
jsniadanko@clarkhill.com
mgarcia@clarkhill.com

Ronald A. King (N. D. Ill. No. 90784709)
CLARK HILL PLC
215 South Washington Square, Suite 200
Lansing, MI 48933
Telephone: (517) 318-3100
rking@clarkhill.com

274293100