**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JULIUS H. SCHOEPS, BRITT-MARIE ENHOERNING, and FLORENCE VON KESSELSTATT, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:22-cv-07013 |
| | ) | Hon. Jeremy C. Daniel |
| SOMPO HOLDINGS, INC., SOMPO INTERNATIONAL HOLDINGS LTD., SOMPO FINE ART FOUNDATION, and SOMPO JAPAN INSURANCE INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL
PROCEDURE 12(b)(1) & 12(b)(2) AND DOCTRINE OF *FORUM NON CONVENIENS***

Daniel T. Graham (ARDC No. 6203811)
Priscilla Singer (ARDC No. 6307021)
Jeffrey M. Sniadanko (ARDC No. 6331532)
Melissa E. Garcia (ARDC No. 6342000)
CLARK HILL PLC
130 East Randolph Street, Suite 3900
Chicago, Illinois 60601
(312) 989-5900
*dgraham@clarkhill.com*
*psinger@clarkhill.com*
*jsniadanko@clarkhill.com*
*mgarcia@clarkhill.com*

Ronald A. King (N. D. Ill. No. 90784709)
CLARK HILL PLC
215 South Washington Square, Ste. 200
Lansing, MI 48933
(517) 318-3100
*rking@clarkhill.com*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I.     THERE IS NO SUBJECT MATTER JURISDICTION OVER THE SOMPO
ENTITIES PURSUANT TO RULE 12(b)(1) ................................................................. 1

     A.    Plaintiffs Lack Standing To Sue. ...................................................................... 1

II.    PLAINTIFFS CANNOT CONJURE SUBJECT MATTER JURISDICTION BY
ALTERNATIVE MEANS. ............................................................................................. 3

     A.    Federal Common Law Does Not Confer Federal Subject Matter
Jurisdiction Over Plaintiffs' Claims................................................................. 3

     B.    Plaintiffs' Request For Plenary Equitable Authority Lacks Support In
Law. .................................................................................................................. 6

III.   NO SPECIFIC PERSONAL JURISDICTION EXISTS OVER THE SOMPO
ENTITIES PURSUANT TO RULE 12(b)(2) ................................................................. 7

     A.    Plaintiffs Fail To Cite Suit-Related Conduct. ................................................ 11

     B.    Plaintiffs Fail To Assert Certain Conduct Is "Related To" Their Claims............ 14

           1.    Defendants' Websites and Advertisements Do Not "Relate to"
Plaintiffs' Claims. ............................................................................... 14

           2.    The Temporary Exhibition Does Not "Relate to" Plaintiffs'
Claims. ................................................................................................. 17

           3.    Insurance Sales by Non-Parties Do Not "Relate to" Plaintiffs'
Claims. ................................................................................................. 19

     C.    The Court's Exercise Of Specific Jurisdiction Would Be Unfair......................... 20

     D.    Illinois' Long-Arm Statute Does Not Confer Personal Jurisdiction..................... 21

IV.   ALTERNATIVELY, THE DOCTRINE OF FORUM NON CONVENIENS
WARRANTS DISMISSAL ........................................................................................... 21

     A.    Japan Is An Available And Adequate Forum. ................................................ 21

     B.    The Private And Public Interest Factors Support Dismissal Under FNC............. 24

CONCLUSION......................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ........................................................................................15, 17

*AFI Holdings of Illinois, Inc. v. Nat'l Broad. Co.*,
    239 F. Supp. 3d 1097 (N.D. Ill. 2017) ...................................................................................12

*be2 LLC v. Ivanov*,
    642 F.3d 555 (7th Cir. 2011) .................................................................................................15

*Benson v. Fannie May Confections Brands, Inc.*,
    944 F.3d 639 (7th Cir. 2019) .................................................................................................13

*Briskin v. Shopify, Inc.*,
    87 F.4th 404 (9th Cir. 2023) .....................................................................................10, 11, 16

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
    582 U.S. 255 (2017).....................................................................................9, 10, 11, 19

*C.H. Johnson Consulting, Inc. v. Roosevelt Roads Naval Station Lands &
    Facilities Redevelopment Auth.*,
    1:12-CV-08759, 2013 WL 5926062 (N.D. Ill. Nov. 5, 2013) ..................................................12

*Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*,
    559 F.3d 671 (7th Cir. 2009) ...................................................................................................5

*Chang v. Baxter Healthcare Corp.*,
    599 F.3d 728 (7th Cir. 2010) ....................................................................................22, 23, 24

*Chicago Transit Auth. Retiree Health Care Tr. v. Dilworth Paxson, LLP*,
    19-CV-07570, 2020 WL 6393006 (N.D. Ill. Nov. 2, 2020) ....................................................20

*Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.*,
    260 F.3d 742 (7th Cir. 2001) ............................................................................................14, 22

*Curry v. Revolution Laboratories, LLC*,
    949 F.3d 385 (7th Cir. 2020) .................................................................................................15

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23, 123 S. Ct. 2041 (2003).......................................................................................17

*Deb v. SIRVA, Inc.*,
    832 F.3d 800 (7th Cir. 2016) .................................................................................................24

ii

*Eco Pro Painting, LLC v. Sherwin-Williams Co.*,
   807 F. Supp. 2d 732 (N.D. Ill. 2011) ...................................................................................16

*Eli Barzilai, et al.. v. Israel Museum*,
   No. 153086/2022, 2022 WL 16856131 (N.Y. Sup. Ct. Nov. 10, 2022) ...........................18, 19

*Fed. Trade Comm'n v. Credit Bureau Ctr., LLC*,
   937 F.3d 764 (7th Cir. 2019) .............................................................................................4, 7

*Ford Motor Co. v. Montana Eighth Jud. Dist. Court*,
   141 S. Ct. 1017 (2021) ............................................................................................9, 10, 11, 19

*Gladstone v. Hillel*,
   203 Cal.App.3d 977, 250 Cal. Rptr. 372 (Ct. App. 1988) .....................................................13

*GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*,
   64 F. Supp. 3d 1179 (N.D. Ill. 2014) ....................................................................................24

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ................................................................................................................9

*Graff v. Leslie Hindman Auctioneers, Inc.*,
   342 F.Supp.3d 819 (N.D. Ill. 2018), vacated on other grounds, 17 C 6748,
   2019 WL 13196397 (N.D. Ill. Feb. 12, 2019) ...........................................................12, 18, 19

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999) ................................................................................................................7

*Gubala v. Time Warner Cable, Inc.*,
   846 F.3d 909 (7th Cir. 2017) ...................................................................................................4

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
   72 F.4th 1085 (9th Cir. 2023) ...............................................................................................16

*Hunter v. Pepsico*,
   631 Fed. Appx. 445 (7th Cir. 2015)......................................................................................2, 3

*Illinois v. Hemi Group LLC*,
   622 F.3d 754 (7th Cir. 2010) .................................................................................................20

*KAJ Foods, LLC v. Berkshire Refrigerated Warehousing, LLC*,
   16-CV-672-WMC, 2017 WL 2602328 (W.D. Wis. June 15, 2017).......................................12

*Kansas v. Nebraska*,
   574 U.S. 445 (2015)...............................................................................................................6, 7

*In re Karavidas*,
   2013 IL 115767, 999 N.E.2d ................................................................................................12

*Kellers Sys., Inc. v. Transp. Int'l Pool, Inc.*,
    172 F. Supp. 2d 992 (N.D. Ill. 2001) ...................................................................12

*Ledesma v. Marriott Int'l, Inc.*,
    18-CV-3947, 2021 WL 2953145 (N.D. Ill. July 14, 2021) ....................................22

*Liu v. Sec. & Exch. Comm'n*,
    140 S.Ct. 1936 (2020)..............................................................................................7

*Longo Realty v. Menard, Inc.*,
    2016 IL App (1st) 151231, 59 N.E.3d 1 ................................................................12

*Lukas Mktg. v. Prince George's Cmty. Coll.*,
    1:13-CV-04062, 2013 WL 5818592 (N.D. Ill. Oct. 29, 2013) ...............................12

*Lyons v. Hyatt Hotels Corp.*,
    3:21-CV-126 DRL-MGG, 2021 WL 5015128 (N.D. Ind. Oct. 27, 2021).........................22, 23

*Mashayekhi v. Iran*,
    US. 515 F. Supp. 41 (D.D.C. 1981) ........................................................................5

*McGill v. Lazzaro*,
    92 Ill.App.3d 393, 416 N.E.2d 29 (1st Dist. 1980)..................................................3

*Meghrig v. KFC W., Inc.*,
    516 U.S. 479 (1996)..................................................................................................4

*Miller v. French*,
    530 U.S. 327 (2000)..................................................................................................7

*Mitchell v. Robert De Mario Jewelry, Inc.*,
    361 U.S. 288 (1960)..................................................................................................7

*Moore v. Brandenberg*,
    248 Ill. 232 93 N.E. 733 (1910) ..............................................................................3

*Myers v. Heritage Enters., Inc.*,
    332 Ill.App.3d 514, 773 N.E.2d. 767 (4th Dist. 2002) ............................................2

*Northern Grain Marketing, LLC v. Greving*,
    743 F.3d 487 (7th Cir. 2014) ...............................................................................8, 20

*O'Connor v. Sandy Lane Hotel Co., Ltd.*,
    496 F.3d 312 (3d Cir. 2007).....................................................................................20

*O'Donnell v. Elgin, J. & E. Ry. Co.*,
    193 F.2d 348 (7th Cir. 1951) .....................................................................................3

*O'Neal v. Bumbo Int'l Tr.*,
  16 F. Supp. 3d 952 (S.D. Ind. 2014) ................................................................................20

*Porter v. Warner Holding Co.*,
  328 U.S. 395 (1946) ..............................................................................................................7

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
  324 U.S. 806, 65 S. Ct. 993, 89 L. Ed. 1381 (1945) ..........................................................12

*Provincial Gov't of Marinduque v. Placer Dome, Inc.*,
  582 F.3d 1083 (9th Cir. 2009) ...........................................................................................4, 5

*Ptasinska v. U.S. Dept. of State*,
  07 C 3795, 2007 WL 3241560 (N.D. Ill. Nov. 1, 2007) ......................................................20

*Reif v. Art Inst. of Chicago*,
  No. 23-CV-2443 (JGK), 2023 WL 8167182 (S.D.N.Y. Nov. 24, 2023) ...............................23

*Relf v. Shatayeva*,
  2013 IL 114925, 998 N.E.2d 18 (Ill. 2013) ..........................................................................2

*Republic of Philippines v. Marcos*,
  806 F.2d 344 (2d. Cir. 1986) ................................................................................................5

*Richter v. LG Chem, Ltd.*,
  18 CV 50360, 2022 WL 5240583 (N.D. Ill. Sept. 27, 2022) ..............................................10

*Rodriguez v. Fed. Deposit Ins. Corp.*,
  140 S. Ct. 713 (2020) ............................................................................................................4

*Rogers v. City of Hobart*,
  996 F.3d 812 (7th Cir. 2021) ..............................................................................................10

*Romag Fasteners, Inc. v. Fossil, Inc.*,
  140 S. Ct. 1492 (2020) ..........................................................................................................7

*Shanahan v. Nat'l Auto Prot. Corp.*,
  No. 1:19-CV-03788, 2020 WL 3058088 (N.D. Ill. June 9, 2020) ...............................8, 9, 20

*Stransky v. Cummins Engine Co., Inc.*,
  51 F.3d 1329 (7th Cir.1995) ................................................................................................14

*In re Syngenta Mass Tort Actions*,
  3:16-CV-00255-DRH, 2017 WL 2117728 (S.D. Ill. May 15, 2017) ....................................20

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) ..............................................................................................20

*Taylor v. Meirick*,
712 F.2d 1112 (7th Cir. 1983) ........................................................................13

*Texas v. New Mexico*,
462 U.S. 554 (1983).........................................................................................6

*TGI Sys. Corp. v. Jens Giessler & Neumann & Muller GmbH & Co. KG*,
15 C 4341, 2016 WL 878264 (N.D. Ill. Mar. 8, 2016) ..................................23

*Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*,
304 F. Supp. 2d 1018 (N.D. Ill. 2004) ...........................................................21

*U.S.O. Corp. v. Mizuho Holding Co.*,
547 F.3d 749 (7th Cir. 2008) ..........................................................................22

*uBID, Inc. v. GoDaddy Group, Inc.*,
623 F.3d 421 (7th Cir. 2010) ..........................................................................20

*Ungaro-Benages v. Dresdner Bank AG*,
379 F.3d 1227 (11th Cir. 2004) ....................................................................5, 6

*United States v. Park*,
389 F. Supp. 3d 561 (N.D. Ill. 2019) ...............................................................4

*Walden v. Fiore*,
571 U.S. 277 (2014).....................................................................................9, 16

*Will v. Northwestern Univ.*,
378 Ill.App.3d 280, 881 N.E.2d 481 (1st Dist. 2007).....................................2, 3

*Wilson v. Sundstrand Corp.*,
99 C 6944, 2002 WL 99745 (N.D. Ill. Jan. 25, 2002) ......................................2

*Zuckerman v. Metro. Museum of Art*,
928 F.3d 186 (2d Cir. 2019).........................................................................5, 6

**Statutes**

735 ILCS § 5/2-209(a)(1) ...........................................................................................21

735 ILCS § 5/2-209(a)(2) ......................................................................................21, 22

755 ILCS § 5/22-3 .........................................................................................................3

Holocaust Expropriated Art Recovery Act of 2016, PL 114-308, December 16,
206 130 Stat 1524 .............................................................................4, 5, 6, 7, 23

Holocaust Victims Redress Act ("HVRA").................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................................................1

Fed. R. Civ. P. 12(b)(2)..................................................................................................1, 7, 12

**Other Authorities**

Prague Holocaust Era Assets Conference, Terezin Declaration (June 30, 2009),
https://www.state.gov/prague-holocaust-era-assets-conference-terezin-
declaration ...........................................................................................................................4

Restatement (Second) of Torts §322, Comment "c" ..................................................13

*Wall Street Journal* ............................................................................................11, 16

Defendants submit this reply memorandum of law in further support of their motion to dismiss Plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2) and the doctrine of *forum non conveniens* (the "Motion"), as follows:

## INTRODUCTION

Plaintiffs' opposition does not cure the essential problem with their case: it simply does not belong in this Court. Plaintiffs fail to rebut any of the Sompo Entities' challenges that: (1) Plaintiffs lack standing to sue as heirs or as representatives of the so-called "community of heirs" of Paul von Mendelssohn-Bartholdy ("Mendelssohn-Bartholdy") or his second wife Elsa; (2) there is no specific personal jurisdiction over Defendants in Illinois; and (3) even if Plaintiffs had standing (which they do not) or the Court had jurisdiction over the Defendants (which it does not), the Court should dismiss the Complaint based on the doctrine of *forum non conveniens* because this dispute is properly heard in the courts of Japan.

Plaintiffs ask the Court to ignore precedent and exercise "equitable plenary jurisdiction" and apply federal common law to maintain their suit in Illinois. ECF#67, pp.10-15.[1] Each time a court has addressed these issues – under the very statutes and treaties on which Plaintiffs now rely – it has refused to do so. This Court should do the same.

## ARGUMENT

## I. THERE IS NO SUBJECT MATTER JURISDICTION OVER THE SOMPO ENTITIES PURSUANT TO RULE 12(b)(1)

### A. Plaintiffs Lack Standing To Sue.

Defendants challenged Plaintiffs' standing to pursue this action (that allegedly survives the Decedents) in their representative capacities as "agents and representatives" of the Heirs of the Decedents for failing to comply with Illinois law. Mtn. pp.7-11 (citing to *Hunter v. Pepsico*, 631

---

[1] Plaintiffs' Amended Response to the Motion (ECF#67), hereinafter "Response" or "Rsp."

Fed. Appx. 445, 446 (7th Cir. 2015) (survival actions must be brought by an "executor or administrator… on behalf of the estate."); FAC ¶¶1, 17, 19-21. Here, Plaintiffs admit that they are not appointed as executors or administrators on behalf of the estates of either Mendelssohn-Bartholdy or his second wife, Elsa. *See* Rsp. p.1; *see also id.* Ex. G at Ex. 4, ¶10. Without attempting to distinguish the authorities Defendants cite[2], Plaintiffs argue they are "**not** suing in a representative capacity" (Rsp. p.7 (emphasis added)), yet in the same breath, claim that they have standing to sue for the survival action under German law "as members of the **community of heirs**". Rsp. p.8; Ex. 4, ¶8; Ex. 4 (F) (as members of a "community of heirs," Plaintiffs "may perform only to **all heirs jointly** and each co-heir may claim only performance to all heirs." (emphasis added)).[3] Indisputably, Plaintiffs are not the "sole heirs" of Mendelssohn-Bartholdy or Elsa, and thus, attempt to bring suit for a survival action in their representative capacities. Plaintiffs' obfuscation on this point does not relieve them of the duty to comply with Illinois law.[4]

---

[2] *See* Myers v. Heritage Enters., Inc., 332 Ill.App.3d 514, 516-17, 773 N.E.2d. 767, 768–69 (4th Dist. 2002) (statutory and common law actions that accrued to the decedent before death survive the death of the decedent); Will v. Northwestern Univ., 378 Ill.App.3d 280, 289-290, 881 N.E.2d 481, 492-93 (1st Dist. 2007) (survival actions in Illinois must be brought by the estate's administrator or representative, and beneficiaries and heirs have neither a right of action nor any control); Relf v. Shatayeva, 2013 IL 114925, ¶33, 998 N.E.2d 18, 27 (Ill. 2013) (to act as an executor or administrator of an estate in Illinois requires the "issuance of letters of office," which are a "hallmark of 'personal representatives' as that term is commonly understood when applied to situations involving estates….").

[3] Plaintiffs cite Wilson v. Sundstrand Corp., 99 C 6944, 2002 WL 99745 (N.D. Ill. Jan. 25, 2002) to argue they have standing to bring suit in their individual capacities. Rsp. p.8. However, Plaintiffs' German law declarant implies that Schoeps and Enhoerning are not individually capable of bringing suit when at least 25 other people can do the same and that even if they were "authorized" to act they would be doing so as members/representatives "of a community of heirs" that jointly consent to their acting. Rsp. Ex. 4, ¶¶10-11. The same applies to Kesselstatt as member of Elsa's "community of heirs." Id. at ¶12. One of two things occur here: If Schoeps is suing on behalf of a community of heirs, he is asking the court to recognize him as the representative of the Mendelssohn-Bartholdy's estate, in which case, Illinois law applies and a representative of the estate must be appointed to pursue the action. If Schoeps is not acting on behalf of a community of heirs, then there is a risk of "multiplicity of suits" if any other heir later learns of their interest in the estate.

[4] Plaintiffs cite to Moore v. Brandenberg, 248 Ill. 232, 236 93 N.E. 733 (1910), but this case does not help them. In *Moore*, the court explained that the "only parties having any interest in the property in dispute are parties to this litigation." Id. at 239. The parties in *Moore* were thus a community of individuals whose rights in an estate were represented in the proceeding leaving no dispute as to who would inherit. Here,

"The well-established rule in this state is that the executor or administrator of a decedent's estate has standing to file suit on behalf of the decedent, **but the** legatees, **heirs**, and devisees **have no such standing**." _McGill v. Lazzaro_, 92 Ill.App.3d 393, 395, 416 N.E.2d 29, 31 (1st Dist. 1980) (emphasis added). Thus, pursuant to _Hunter_, _Will_ and _McGill_, an executor or administrator *must* be appointed in either Illinois or in another jurisdiction in order to file suit on behalf of a decedent for a survival action in an individual or representative capacity. *See* Mtn. p.8.

None of the cases cited in the FAC and distinguished by Defendants in their Motion lead to a different result. Illinois law simply does not support Plaintiffs' contention that they – as "members of a community of heirs" – have a right to bring a survival action in a representative capacity, let alone in a personal capacity, without an estate being opened or being appointed as administrator. Mtn. p.10, fn.3. Absent letters of office or an appointment, Plaintiffs lack standing.[5]

## II.   PLAINTIFFS CANNOT CONJURE SUBJECT MATTER JURISDICTION BY ALTERNATIVE MEANS.

### A.   Federal Common Law Does Not Confer Federal Subject Matter Jurisdiction Over Plaintiffs' Claims.

Plaintiffs next contend this Court may adjudicate this dispute under the "federal common law" using plenary equitable authority to allow Plaintiffs to acquire "Nazi-confiscated art". FAC ¶¶315-329; Rsp. pp.10-15.[6] The gravamen of Plaintiffs' Response is the implication of the HEAR

---

however, there is a question as to who inherits because the entire community is not present. *See* FAC ¶24 (stating heirs of Mendelssohn and Elsa "are aware of their competing ownership claims to *Sunflowers*.") *see also* Rsp. Ex. 4, ¶12 (stating that there are two communities of heirs, one community from Mendelssohn-Bartholdy and one from Elsa).

[5] *See* 755 ILCS § 5/22-3 (To pursue a claim, an executor or administrator must present letters of office issued in Illinois or "by a court of competent jurisdiction of any other state, territory, country or the District of Columbia...."); *see also* _O'Donnell v. Elgin, J. & E. Ry. Co._, 193 F.2d 348 (7th Cir. 1951) (recognizing the capacity of a duly appointed administrator to sue).

[6] Plaintiffs' Response is littered with statements that *Sunflowers* is "Nazi-confiscated art", a description contradicted by the very allegations in the FAC. Rsp. p.17; FAC ¶193. Nowhere in their Response do Plaintiffs acknowledge Mendelssohn-Bartholdy's consignment and sale of *Sunflowers* to the Paris-based art dealer Paul Rosenberg (FAC ¶199, 240), or the eventual purchase by the Beatty family in 1934 (FAC

3

Act and its legislative history, policies, and ties to foreign relations is sufficient to confer jurisdiction.[7] This is wrong, and Plaintiffs' own cases demonstrate as much. Plaintiffs' proposed application of federal common law construes case law in a vacuum, and consequently misunderstands the appropriate standards. Defendants cite to *Rodriguez*, *Park*, *Gubala*, *Meghrig*, and *Credit Bureau* to support and explain why federal common law does not apply here.[8] Plaintiffs made no attempt to distinguish any of these cases.

Plaintiffs cite *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083 (9th Cir. 2009), to argue this Court may apply federal common law to confer federal subject matter jurisdiction. Rsp. p.14. In *Provincial,* the Ninth Circuit reviewed the propriety of a removal, and whether the Act of State Doctrine applied to the facts of the case to serve as an underlying basis for federal question jurisdiction. *Id.* at 1088. The court concluded because the Act of State Doctrine was only implicated defensively, rather than as an essential element of the cause of action, it could not confer federal jurisdiction. *Id.* at 1090. Further, the court held, "while the complaint is sprinkled with references to the Philippine government, Philippine law, and the government's complicity in the claimed damage," "none of the supposed acts of state. . .[were] essential to [plaintiff's] claims." *Id.* at 1091. Federal common law therefore did not apply. Thus, *Provincial* supports *Defendants'* argument:  the HEAR Act neither contains an essential element of any of Plaintiffs' claims, nor does it create an independent cause of action; instead, it is limited to pre-emption of state statutes

---

¶239), before Sompo Japan acquired the Painting at Christie's highly publicized 1987 London public auction ("**Auction**"). FAC ¶5.

[7] As explained in the Motion, the FAC's reference to the HVRA, Terezin Declaration, and HEAR Act do not alter the conclusion that no court has created unique subject matter jurisdiction to adjudicate the types of claims Plaintiffs bring here. *See id.* pp.13-14; 15, n.7 (FAC ¶¶315-329 (Counts 9-12).

[8] *See* Mtn. pp.11-13, citing *Rodriguez v. Fed. Deposit Ins. Corp.,* 140 S. Ct. 713, 717 (2020); *United States v. Park,* 389 F. Supp. 3d 561, 579-580 (N.D. Ill. 2019); *Meghrig v. KFC W., Inc.,* 516 U.S. 479, 487-88 (1996); *Fed. Trade Comm'n v. Credit Bureau Ctr., LLC,* 937 F.3d 764, 767 (7th Cir. 2019); *Gubala v. Time Warner Cable, Inc.,* 846 F.3d 909 (7th Cir. 2017).

4

of limitations under certain circumstances.[9] *See* <u>PL 114-308, §5(f)</u>. *<u>Zuckerman v. Metro. Museum of Art</u>*<u>, 928 F.3d 186, 195 (2d Cir. 2019)</u>.

Plaintiffs' other cited authorities – *Ungaro*, *Republic of Philippines* and *Mashayekhi* – establish foreign relations required to confer federal jurisdiction must be "substantial."[10] In *Ungaro,* the descendant of an heir to a German corporation sued German banks, alleging that before and during World War II, banks, in conjunction with the Third Reich, had stolen Jewish heirs' stock as part of the "Aryanization" process. *<u>Ungaro-Benages v. Dresdner Bank AG</u>*<u>, 379 F.3d 1227, 1233 (11th Cir. 2004)</u>. The Eleventh Circuit recognized that "the federal government has engaged in years of state-to-state negotiations and, in 2000, concluded an executive agreement with the German government addressing litigation arising from the National Socialist era." *<u>Id.</u>* <u>at 1233</u>. There, the plaintiff's claims implicated the executive agreement at issue. *<u>Id.</u>* <u>at 1234</u>. ("[T]he agreement explicitly covers property claims."). Further, "the Supreme Court determined that this agreement preempts any contrary state law because such state laws would interfere with the President's foreign affairs power." *<u>Id.</u>* <u>at 1233</u> (citation omitted). The court held there were sufficient ties to foreign relations to support application of federal law rather than state law. *<u>Id.</u>*

---

[9] As the court recognized in *Provincial*, a statute of limitations is an affirmative defense engaged defensively, not an essential element of a claim, thus it cannot give rise to federal jurisdiction. *See* <u>582 F.3d at 1090</u>; *see also*, <u>*Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009)</u> (observing while a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations, dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness)).

[10] *See* <u>*Republic of Philippines v. Marcos*, 806 F.2d 344, 352 (2d. Cir. 1986)</u> (finding federal jurisdiction because the issue "directly and significantly affect[ed] American foreign relations where the foreign government made a request on American courts). Here, there is no request by a foreign government to apply the HEAR Act for this purpose. In <u>*Mashayekhi v. Iran*, US. 515 F. Supp. 41, 43 (D.D.C. 1981)</u>, the meaning of a <u>treaty</u> between the U.S. and Iran was at core of the decision. The court explained: where no underlying constitutional basis to apply federal jurisdiction, the determinative issue is whether the case in some way "arises under" the laws of the United States. *<u>Id.</u>* This case arose under U.S. law because there was a "sufficiently strong" national interest to compel federal rule of decision rather than state law due to high tensions between U.S. and Iran; and the existence of hundreds of other cases was an instance of such and called for a consistent interpretation of the Treaty under federal law. *<u>Id.</u>* *Mashayekhi* is simply inapposite.

Applicable to this case, the HEAR Act does not create agreements with foreign governments over property or tort claims, it only extends state law statutes of limitations under certain circumstances. Therefore, any foreign policy underlying the HEAR Act is not an essential element of Plaintiffs' claims. *See* FAC ¶¶315-321; *see also* Mtn. pp.18-25. Lastly, Plaintiffs provide no analysis or case law to rebut the *Zuckerman* court's refusal to create a uniform federal common law remedy under the HEAR Act. *Zuckerman,* 928 F.3d at 195, n.9. Plaintiffs' suggestion that this Court should apply federal common law is thus without support and must be rejected. *See* Counts Eleven and Twelve. FAC ¶¶322-329.

### B.    Plaintiffs' Request For Plenary Equitable Authority Lacks Support In Law.

Plaintiffs' request for the Court's exercise of plenary equitable authority fares no better. No legal authority supports Plaintiffs' request for this Court's exercise of plenary equitable authority over Counts Eleven and Twelve. (FAC ¶¶322-329). Plaintiffs' continued, mistaken reliance on *Kansas v. Nebraska,* 574 U.S. 445, 456 (2015) ignores a critical caveat to a Court's exercise of plenary equitable authority: "legal status underscores a limit on our enforcement power: We may not 'order relief inconsistent with [a compact's] express terms.'" *Id.* at 455-56 (citing *Texas v. New Mexico,* 462 U.S. 554, 564 (1983)).

Here, Congress expressly refused to create a civil claim or cause of action under federal or state law or create any federal remedies under the HEAR Act (PL 114-308, §5(f)), let alone any of the other statutes and proclamations Plaintiffs cite in the FAC relating to Nazi-stolen art. FAC ¶45. Congress' intent forecloses Plaintiffs' argument that this Court should exercise its plenary equitable authority to create a means by which Plaintiffs seek possession of *Sunflowers*, because any creation of an equitable remedy would be "inconsistent with the [Act's] express terms." *Kansas,* 574 U.S. at 456. The Supreme Court in *Mitchell v. Robert De Mario Jewelry, Inc.,* 361 U.S. 288, 292 (1960) appreciated this deference to Congress and instructs that courts presume

Congress is cognizant of the scope of equity, and knows what it is doing when it provides for (or declines to provide) general equitable relief in a regulatory statute. *See id.* at 291-92. The plain meaning of the words themselves in the HEAR Act serve to raise "a necessary and inescapable inference," sufficient under *Porter v. Warner Holding Co.,* 328 U.S. 395, 398 (1946) and *Mitchell*, that Congress intended to limit relief to that enumerated in the Act. *Credit Bureau,* 937 F.3d at 783. That Plaintiffs fail to address Defendants' case law on these issues reveals their misunderstanding of the limitations on the exercise of plenary equitable authority, and their case law in opposition ranges from inapposite[11] to misleading.[12] None of the statutes cited by Plaintiffs even hints that this Court should exercise "plenary equitable authority" to create jurisdiction, let alone causes of action or remedies when Congress declined to so provide.

## III. NO SPECIFIC PERSONAL JURISDICTION EXISTS OVER THE SOMPO ENTITIES PURSUANT TO RULE 12(b)(2)

The Court should dismiss the FAC because there are not sufficient suit-related minimum contacts between Defendants and Illinois to satisfy the Supreme Court's due process requirements. Nor do Plaintiffs submit counter-Declarations to refute that: (1) Sompo Holdings is a Tokyo-based holding company with no offices or business in Illinois or anywhere in the U.S., does not target Illinois with its advertisements, and was not involved in displaying *Sunflowers* at the Art Institute

---

[11] *Miller v. French,* 530 U.S. 327, 340 (2000) (determining plain language of automatic stay provision of the Prison Litigation Reform Act did not permit district courts to exercise their equitable authority to suspend operation of stay); *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 317 (1999) (finding district court had no authority to issue a preliminary injunction where ultimate relief was analogous to a "creditor's bill" that would prevent the petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages—not traditionally provided for in equity).

[12] Plaintiffs' citation to *Romag Fasteners, Inc. v. Fossil, Inc.,* 140 S. Ct. 1492 (2020) is misleading. In *Romag* the Court analyzed whether imposition of a *mens rea* component for trademark infringement was required to recover lost profits for use of false or misleading trademarks. *Id.* at 1494-97. The Supreme Court held it was not a requirement and *Romag* has no bearing whatsoever on the issues presented here. *Liu v. Sec. & Exch. Comm'n,* 140 S.Ct. 1936, 1953 (2020) was not a case where the court was determining whether to exercise plenary equitable authority. Instead, Justice Thomas' dissent discussed generally that "constructive trust" and "accounting" are traditional equitable remedies. The classification of these remedies is not the issue in this case.

of Chicago in 2001 for 3½ months ("**Exhibition**") (T. Noma Decl. ¶¶3, 5-7, 11); (2) Sompo Japan is a Tokyo-based insurance company and does not solicit insurance in Illinois, does not target Illinois with its advertisements, and did not receive any proceeds from ticket sales from the Exhibition (A. Yoshida Dec. ¶¶3, 6-7, 15); (3) Sompo Bermuda is a Bermuda-based holding company with no offices or business in Illinois or anywhere in the U.S.; it does not target Illinois with its advertisements, and was not involved in displaying *Sunflowers* at the Exhibition (G. Garside Dec. ¶¶3, 6-8, 10); and (4) the Art Foundation is a Tokyo-based public interest foundation that does not sell insurance in any country; it has no offices or business anywhere in the U.S.; it does not target Illinois with its advertisements, and it did not receive any proceeds from ticket sales from the Exhibition (T. Umemoto Dec. ¶¶3-7, 18). Defendants' Declarations are unrefuted.[13]

To demonstrate the lack of suit-related contacts between Defendants and Illinois, the Motion addressed each of Plaintiffs' causes of action, their elements, and the facts pled in the FAC. Mtn. pp.15-35. Plaintiffs entirely eschew this analysis in their Response. Instead, they contend specific jurisdiction exists relying on (1) a non-defendant, Sompo entity that sells insurance in Illinois and has an office on Madison Avenue in Chicago[14] (Rsp. pp.1, 22, 26, 28), and (2) the existence of a website viewable in Illinois, and throughout the world, where the *Sunflowers* image is shown (reflective of Sompo's "archetypal branding")[15]. *Id.* pp.1, 5, 26, 28-29, 31. Plaintiffs

---

[13] The Court must accept as true all "unrefuted" facts in Defendants' declarations. *Shanahan v. Nat'l Auto Prot. Corp.*, No. 1:19-CV-03788, 2020 WL 3058088, at *1 (N.D. Ill. June 9, 2020) (citing *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014)); *see also* Mtn. p.6.

[14] As noted in the G. Garside Declaration, "Sompo Bermuda has indirect subsidiaries that have an office in Chicago for the purpose of selling insurance." Mtn. Ex. C, ¶9.

[15] In their Response, Plaintiffs improperly group together all Defendants' websites by repeatedly stating that Defendants display the Sunflowers image on "their website." Rsp. p.5; *see also id.* pp.28-29, 31-32, 36, 38. However, each Defendant maintains its own, separate website. Only Plaintiffs' "expert" cites to the website of Sompo Holdings (https://www.sompo-hd.com/en/) to state that the *Sunflowers* image can be viewed there. Rsp. Exhibit 3, ¶8. In the FAC, only Sompo Holdings' website is listed as displaying the *Sunflowers* image. FAC ¶¶39 Exhibit 10, 62, 82-83, 85, 89(a), 119, 270(e), 311.

fundamentally misapprehend their burden to allege *suit-related* conduct in Illinois sufficient to confer personal jurisdiction over Defendants. Plaintiffs' argument boils down to their mistaken theory that any Defendant having a subsidiary "doing business" in Illinois is enough to confer personal jurisdiction, even when that business is not Plaintiffs' purchase of insurance and is unrelated to their claims. The Supreme Court in *Bristol-Myers* rejected this theory, holding a "defendant's general connections with the forum are not enough." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 256 (2017) ("[w]hat is needed is a connection between the forum and the specific claims at issue") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011) (a plaintiff must allege "'affiliation between the forum and the underlying controversy....'")); *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) (holding no specific jurisdiction where the defendant's conduct did not create a "substantial connection" with the forum state).

Without mentioning, let alone attempting to distinguish, *Bristol-Myers*, Plaintiffs argue the Supreme Court's decision in *Ford Motor Co. v. Montana Eighth Jud. Dist. Court,* 141 S. Ct. 1017 (2021) fundamentally altered the specific personal jurisdiction standards. Rsp. p.32. Not so. First, *Ford* must be viewed in context. The Supreme Court rejected defendant's argument that a direct causal link was the only way a court could exercise specific jurisdiction over it. *Id.* at 1019. The Supreme Court explained that the specific jurisdiction inquiry does not always require proof of causation. *Id.* at 1026. However, the *Ford* Court, even absent a direct causal link between defendant's forum conduct and the claim, recognized the importance of strong suit-related contacts between defendant and the forum state. More specifically, *Ford* involved product liability claims against for personal injuries resulting from allegedly defective vehicles sold outside the forum state. *Id.* at 1019. The Court determined that Ford had suit-related contacts because "Ford had

systematically served a market in [the forum state] for the very vehicles that the plaintiffs allege[d] malfunctioned and injured them in [the forum state]". *Id.* at 1028. In contrast, here, neither Plaintiffs' claims for conversion nor for any exploitation of the image relate to Defendants' *Illinois* activities, where the alleged conversion took place *outside of Illinois*, and the alleged exploitation of the publicly available image of *Sunflowers* was not purposely targeted to Illinois.

Plaintiffs fail to cite any decision holding that *Ford* altered the *Bristol-Myers* standard for determining specific jurisdiction. On the contrary, this Court has expressly held that "*Ford* wrought **no sea change in the law of specific personal jurisdiction....**"[16] *Richter v. LG Chem, Ltd.*, 18 CV 50360, 2022 WL 5240583, at *2 (N.D. Ill. Sept. 27, 2022) (emphasis added). The *Richter* court held a defendant that manufactured rechargeable batteries outside of Illinois and did not target Illinois in any way, did not relate to plaintiff's product liability claim sufficiently to support personal jurisdiction over it in the forum. *Id.* at *3. Other courts have reached the same conclusion. Recently, the Ninth Circuit harmonized *Ford* and *Bristol-Myers* in *Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023) explaining the "arises out of or relates to" analysis for specific jurisdiction is a "**claim-tailored inquiry that requires us to examine the plaintiff's specific injury and its connection to the forum-related activities in question.**" *Briskin*, 87 F.4th at 413 (emphasis added) (citing *Bristol-Myers*, 582 U.S. at 262). "'[A]rising out of'... 'asks about causation.'" *Id.* at 413 (quoting *Ford*, 141 S. Ct. at 1026). As for the "related to" part of the inquiry, *Briskin* clarified that *Ford* "cautioned that 'relates to' 'does not mean anything goes.'" *Id.* at 414

---

[16] In *Richter*, the court dismissed for lack of specific jurisdiction. Plaintiff moved to vacate because the dismissal was based on a lack of causal relationship between defendant's Illinois contacts and plaintiff's claims. 2022 WL 5240583, at *2. Plaintiff argued *Ford* precluded dismissal on this basis. *Id.* at 1-2 (citing *Ford*, 141 S. Ct. at 1026). The court responded that it was "far from 'almost certain' that *Ford* upends Seventh Circuit personal jurisdiction precedent." *Id.* at 2. *Richter* also cited *Rogers v. City of Hobart*, 996 F.3d 812 (7th Cir. 2021) to say "the Seventh Circuit's main comment on *Ford* was simply to clarify that it 'does not alter the governing principle in this case.'" *Richter,* 2022 WL 5240583 at *3 (citing *Rogers*, 996 F.3d at 820 & n.14).

(quoting *Ford*, 141 S. Ct. at 1026). The Ninth Circuit concluded that *Ford* did not fundamentally alter the specific jurisdiction analysis, let alone abrogate the Supreme Court's decision in *Bristol-Myers*.[17]

As addressed below, Plaintiffs have not alleged the requisite suit-related Illinois activity to confer specific personal jurisdiction over Defendants in this case.

### A. Plaintiffs Fail To Cite Suit-Related Conduct.

None of Defendants' Illinois activities "arise out of" or "relate to" Plaintiffs' claims.

Counts One, Two and Three seek replevin, conversion and trover. FAC ¶¶274-289. In their Motion, Defendants explain there are no suit-related contacts in Illinois because Sompo Japan acquired the Painting in London at the Auction in 1987; and no other Defendant ever owned or controlled the Painting. Mtn. pp.18-20. Nonetheless, Plaintiffs contend that displaying *Sunflowers* at the Exhibition was "unlawful dominion and control" over it, and thus "relates to" Counts I-III[18]

---

[17] The *Briskin* court also held plaintiff's allegations of defendant's broader contacts (extensive business in the forum, contracts with state merchants, a brick-and-mortar store, a fulfillment center, and subsidiary employees) were only relevant for a general jurisdiction analysis and were deemed irrelevant for specific jurisdiction. 87 F.4th at 413. Here, Plaintiffs point to the following irrelevant contacts: a non-party's subsidiary's physical office in Chicago that sells insurance (FAC ¶62); display of the *Sunflowers* image (which is in the public domain) on certain of the Sompo Entities' websites for marketing insurance sales (FAC ¶62); temporary 3 ½ month museum display of *Sunflowers* in Illinois more than 20 years ago (FAC ¶31); solicitation of prospective U.S. insurance consumers (FAC ¶75); and a *Wall Street Journal* ad that did not feature the *Sunflowers* image and has not specifically targeted Illinois (FAC ¶84).

[18] Plaintiffs also contend the actions of all Defendants should be lumped together under an alter ego theory. Rsp. pp.16-17. This is a baseless attempt to misdirect this Court from the fact that none of the Sompo Entities have sufficient minimum contacts to confer specific jurisdiction here. Plaintiffs cite to *Kellers Sys., Inc. v. Transp. Int'l Pool, Inc.*, 172 F. Supp. 2d 992 (N.D. Ill. 2001) as the legal standard for the alter ego theory; however, *Kellers* did not address a Rule 12(b)(2) motion. In *AFI Holdings of Illinois, Inc. v. Nat'l Broad. Co.*, 239 F. Supp. 3d 1097 (N.D. Ill. 2017), the court observed that, where plaintiff did not allege corporate formalities between the defendant affiliates were not observed, or that one defendant affiliate exercised control over the other, it could not find jurisdiction over the non-resident affiliate for lack of evidence, nor merely because it was an affiliate of an Illinois entity. *Id.* at 1102. In Plaintiffs' FAC and Response, they merely allege that because the Sompo Entities are affiliated, they are alter egos of one another – but offer no evidence or counter-declarations in support. *See* FAC ¶¶57-60; *see also* Rsp. pp.16-17. As in *AFI Holdings*, where Plaintiffs offer no evidence to support an alter ego argument, this Court cannot find that it has jurisdiction over Defendants merely because they have Illinois affiliates. *See* Mtn. at Exs. A-D.

to Defendants' Illinois contacts. Rsp. p.32. Under Illinois law, "[c]onversion requires the plaintiff establish by a preponderance of the evidence" all the elements of the cause of action. *Longo Realty v. Menard, Inc.*, 2016 IL App (1st) 151231, ¶ 39, 59 N.E.3d 1, 11. "Dominion and control" is one element, but Plaintiffs ignore the rest of the necessary elements to prove where the alleged conversion took place, including Plaintiffs' obligation to demand possession of the converted property. *In re Karavidas*, 2013 IL 115767, ¶ 61, 999 N.E.2d at 310. Plaintiffs did not demand possession of *Sunflowers* when Sompo Japan permitted its display at the Exhibition. In sum, Plaintiffs offer no facts to show suit-related conduct that arises out of or relate to Defendants' Illinois contacts.[19] *See Graff v. Leslie Hindman Auctioneers, Inc.*, 342 F.Supp.3d 819, 826-827 (N.D. Ill. 2018), vacated on other grounds, 17 C 6748, 2019 WL 13196397 (N.D. Ill. Feb. 12, 2019) (temporary passage of the contested painting in Illinois did not create jurisdiction over an Arizona defendant for plaintiff's conversion claim).

Counts Four and Five seek "unjust enrichment" under Illinois law. FAC ¶¶291; 296-300. Unjust enrichment is not a stand-alone claim; it must be tied to a related claim to survive. Mtn. pp.20-21; *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). If these claims are tied to conversion or trover, Plaintiffs do not allege those torts occurred in Illinois.

Count Six is for breach of duty to aid Plaintiffs in recovering the Painting. FAC ¶¶301-04. Illinois does not impose such a duty. Mtn. pp. 21-22. Relying on their conversion claim, Plaintiffs

---

[19] Plaintiffs' reliance on breach of contract cases where one party was an Illinois resident are inapposite and do not support specific jurisdiction here where only tort claims are alleged. Cf. *C.H. Johnson Consulting, Inc. v. Roosevelt Roads Naval Station Lands & Facilities Redevelopment Auth.*, 1:12-CV-08759, 2013 WL 5926062 at *1, 6 (N.D. Ill. Nov. 5, 2013) (defendant's contacts with plaintiff, as well as its contacts authorizing plaintiff to contract with a Chicago-based consulting firm, conferred jurisdiction over defendant); *KAJ Foods, LLC v. Berkshire Refrigerated Warehousing, LLC*, 16-CV-672-WMC, 2017 WL 2602328 (W.D. Wis. June 15, 2017) (breach of contract dispute); *Lukas Mktg. v. Prince George's Cmty. Coll.*, 1:13-CV-04062, 2013 WL 5818592 (N.D. Ill. Oct. 29, 2013) (breach of contract); *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 807, 65 S. Ct. 993, 89 L. Ed. 1381 (1945) (breach of contracts and infringement of three patents).

cite *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir. 1983) to support their contention that such a duty exists. Rsp. p.41. However, the Seventh Circuit in *Taylor* recognized the duty only with respect to "statutory torts". Mtn. p.22. Further, Plaintiffs rely on a California state court case, *Gladstone v. Hillel*, 203 Cal.App.3d 977, 989, 250 Cal. Rptr. 372 (Ct. App. 1988).[20] Both citations are inapposite. The Restatement in *Taylor* articulates a tortfeasor has a duty to assist his "victim." *See* Restatement (Second) of Torts §322, Comment "c." Plaintiffs allege the initial conversion injury occurred either in (i) Germany in 1934 when Mendelssohn-Bartholdy transferred *Sunflowers* to Paul Rosenberg; (ii) when the Beattys purchased it; or (iii) after that, when Sompo Japan acquired *Sunflowers* at Auction – and that this injury created a duty for Defendants to assist their "victim." However, *nothing* in Christie's information made available at the Auction (a copy of which Plaintiffs attached to their FAC) revealed any victim; rather, it revealed that Rosenberg acquired the Painting from Mendelssohn-Bartholdy and the Beattys in turn bought the Painting from Rosenberg. FAC, Ex. 3, PageID #507. Further, Plaintiffs did not demand possession of *Sunflowers* until 2022 in *Japan* – thus, no duty arose in *Illinois* to assist any "victim". As a result, the FAC fails to plead suit-related conduct occurred in Illinois to support jurisdiction.

Count Seven seeks breach of duty to refrain from commercially exploiting *Sunflowers*. FAC ¶¶305-08. Defendants explain in their Motion that there is no such tort claim under Illinois law. Mtn. p.23. Plaintiffs did not challenge Defendants' argument, and therefore concede it. *See Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (by failing to

---

[20] In *Gladstone*, defendants knew the identity of their victim when they directly stole jewelry molds from him. *Id.* at 984-85. The Restatement of Torts applied as defendants knew they could help their victim. *Id.* at 984. Thus, *Gladstone*'s facts do not help Plaintiffs assert here that Defendants had or breached a duty to aid them recover *Sunflowers*, where their "victim" was unknown to them. Even if, *arguendo*, *Gladstone* applied the Restatement of Torts to conversion, Illinois state law governs, not California. Here, neither *Taylor* nor any other case applying Illinois law has expanded the Restatement of Torts for personal injury beyond statutory torts – and Plaintiffs have alleged none here.

address an argument that is not frivolous or non-dispositive, a non-moving party acquiesces in the movant's argument, and "acquiescence operates as a waiver").

Count Eight seeks recovery under slander of title. FAC ¶¶309-14. In their Motion, Defendants explain why the FAC does not allege any suit-related activities in Illinois. Mtn. pp.23-25. Again, Plaintiffs failed to respond, thus conceding their argument. *See Cincinnati Ins. Co.,* 260 F.3d at 747; *Stransky v. Cummins Engine Co., Inc.,* 51 F.3d 1329, 1335 (7th Cir.1995) ("[W]hen presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action.... The federal courts will not invent legal arguments for litigants."). Concession aside, Sompo Japan took title to the Painting following the Auction in London and maintained title to the Painting in Japan.[21] Neither took place in Illinois.

Counts Nine, Ten, Eleven, and Twelve seek restitution – the return of *Sunflowers* – and unjust enrichment under "federal common law" and "plenary equitable authority." FAC ¶¶315-329. Plaintiffs do not allege any suit-related conduct arising out of or relating to Defendants' Illinois contacts to support jurisdiction over such "claims". *See supra* I.B; *see also* Mtn. pp.11-15.

Further, Plaintiffs fail to carry their burden to plead that any Illinois-directed conduct gives rise to or relates to Plaintiffs' claims to confer specific personal jurisdiction over Defendants.

**B.    Plaintiffs Fail To Assert Certain Conduct Is "Related To" Their Claims.**

**1.    Defendants' Websites and Advertisements Do Not "Relate to" Plaintiffs' Claims.**

Plaintiffs argue that, because Illinois residents can view the *Sunflowers* image on a Defendant's website, that is sufficient to confer specific jurisdiction in Illinois. Rsp. pp.28-29, 36;

---

[21] As it relates to the issue of title, Plaintiffs argue that Defendants disregarded Christie's "'express disclaimer' that encouraged prospective buyers to investigate independently all materials offered at auction to ensure that they were securing good title." Rsp. p.4. Plaintiffs' obfuscation on this point should be ignored. As auctioneer, Christie's did not warrant title to the Painting. Here, the Seller (the Beattys) expressly warranted to the Buyer (Sompo Japan) that they would be able to "transfer good and marketable title" to the *Sunflowers*. *See* Ex. 3 to FAC, PageID #484; *see also* Mtn. p.24.

*see* footnote 16 supra. That argument lacks merit. First, none of the Plaintiffs declare they have set foot in Illinois, much less viewed the website in Illinois. Even so, the Seventh Circuit in *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) flatly rejected that mere accessibility of a website in Illinois is sufficient to confer jurisdiction. "Having an 'interactive website'… should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible." The Seventh Circuit instead looked to whether defendant had "targeted [forum state] somehow[]". *Id.* Without attempting to distinguish *Advanced Tactical*, Plaintiffs argue *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385 (7th Cir. 2020) establishes that a website's accessibility in Illinois can confer specific jurisdiction, yet *Curry* is inapposite. There, the court found defendant's website targeted Illinois because it *sold the product at issue* to Illinois consumers through the website. *Id.* at 400. The Seventh Circuit expressly clarified that those website sales to Illinois residents "distinguish[ed] [defendant] from 'the defendant [that] merely operates a website, even a 'highly interactive' website, that is accessible from, **but does not target**, the forum state.'" *Id.* (quoting *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011)) (emphasis added). The FAC does not plead that Plaintiffs purchased a "product" through any Defendants' website accessible in Illinois, let alone that the website was expressly aimed or targeted at Illinois consumers.

The Ninth Circuit recently rejected an argument similar to Plaintiffs' in *Briskin*. There, the court analyzed whether a non-resident defendant's interactive website was expressly aimed at the forum conferring specific jurisdiction. 87 F.4th at 415. The court held that, to confer jurisdiction, "something more" is required along with the interactive website. *Id.* at 417 (quoting *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092 (9th Cir. 2023)). To establish that "something more", a plaintiff must allege that the "defendant platform has a 'forum-specific focus,'" "the

defendant is specifically 'appeal[ing] to ... an audience in a particular state,'" or the defendant is "'actively target[ing]' the forum state...."[22] _Briskin_, 87 F.4th at 419-20 (internal citations omitted). Applied here, the Court must look to whether the FAC alleges facts that could establish that Sompo _expressly aimed_ its website at Illinois. It does not. Plaintiffs' own "expert" confirms that Defendants' websites are _not_ purposely directed or targeted to Illinois: Defendants invoked _Sunflowers_ "to gain commercial traction with insurance consumers in Illinois, **and throughout the U.S.** where their corporate websites are accessible" and "Defendants...generating...subliminal psychological connections and traction with insurance consumers in Illinois **and elsewhere** to facilitate the sale of their products." Ex. 3 to Rsp. ¶¶1, 11 (emphasis added). Plaintiffs allege no facts that could establish that Defendants targeted Illinois differently than any other states through their websites viewable worldwide.[23]

Second, Plaintiffs assert that a national advertisement (_Wall Street Journal_ Article, FAC ¶84) confers specific jurisdiction over Defendants in Illinois. Plaintiffs make no effort to distinguish _Eco Pro Painting, LLC v. Sherwin-Williams Co._, 807 F. Supp. 2d 732, 737 (N.D. Ill. 2011), cited by Defendants, which held "[a]s a general rule, 'national advertisements are insufficient to subject a defendant to jurisdiction in Illinois.'" Plaintiffs' claim must be rejected.

Third, Plaintiffs completely avoid addressing Defendants' argument that display of the _Sunflowers_ "image", which is in the public domain, on an unspecified Sompo website is insufficient to confer personal jurisdiction. Mtn. pp.29-32. Instead, Plaintiffs resort to name-calling

---

[22] _Briskin_ further explains that "[w]hat is needed... is some prioritization of the forum state, some differentiation of the forum state from other locations, or some focused dedication to the forum state which permits the conclusion that the defendant's suit-related conduct 'create[s] a substantial connection' with the forum." _Briskin_, 87 F.4th at 420 (quoting _Walden_, 571 U.S. at 284).

[23] Plaintiffs claim that Defendants profit "by employing the Painting on their website to sell insurance in Illinois." Rsp. p.31. _Briskin_ addressed a similar argument: "the fact that a broadly accessible web platform knowingly profits from consumers in the forum state is not sufficient to show that the defendant is expressly aiming its intentional conduct there." _Briskin_, 87 F.4th at 419.

and misdirect their argument to the physical Painting.[24] Rsp. p.40. Plaintiffs do not challenge Defendants' (let alone any other person's) unfettered right to use the *Sunflowers* image, which is in the public domain and free for all to use. *See Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 33–34, 123 S. Ct. 2041, 2048, (2003). Plaintiffs' attempt to create a jurisdictional, suit-related fact by characterizing the use of the *Sunflowers* image on an unspecified website as a tool to influence the "subliminal subconscious of the Illinois insurance consumers" is a bridge too far. Rsp. p.2; Mtn. p.11, n.5. Certainly, Plaintiffs do not allege that they are Illinois consumers and they cannot manufacture suit-related conduct from the public domain image's accessibility on a website not targeted to Illinois. *See Advanced Tactical,* 751 F.3d at 796; Mtn. pp.29-32.

## 2. The Temporary Exhibition Does Not "Relate to" Plaintiffs' Claims.

One can only surmise that Plaintiffs likely filed this suit in Illinois because the Painting was temporarily at the Art Institute of Chicago for 3½ months over 22 years ago. No Plaintiff purports to have any connection with Illinois, let alone to have purchased insurance from any Defendant nor affiliate of any Defendant in Illinois. Plaintiffs suggest Defendants "commercially exploited" the Painting "to reap unjust enrichment" at the Exhibition, and that this (were it true) would confer jurisdiction. Rsp. p.32[25]. But, Plaintiffs neither cite any supporting case law nor distinguish *Eli Barzilai*, and *Graff* relied upon by Defendants. Rsp. pp.31-32, n. 100.[26] Both held the *mere passage* of the artwork at issue in the forum did *not* confer specific jurisdiction over defendants, because plaintiffs' injuries occurred elsewhere. More specifically, *Graff* involved the alleged conversion of three paintings taken by plaintiff's ex-wife and pawned to a Phoenix-based

---

[24] Instead of responding, Plaintiffs resort to calling Defendants' argument "fatuous." Rsp. p.40.
[25] Plaintiffs allege no facts to support their bald assertion that Defendants commercially exploited *Sunflowers* at the Exhibition. By comparison, Defendants attached the United States Department of State's Federal Register Public Notice 3726 which shows neither Sompo Japan nor the Art Foundation received any profit from the Painting's inclusion in the Exhibition. *See also* Mtn. Ex. E.
[26] Citing *Eli Barzilai, et al.. v. Israel Museum,* No. 153086/2022, 2022 WL 16856131 (N.Y. Sup. Ct. Nov. 10, 2022) and *Graff,* 342 F. Supp 3d 819, at 821-22.

pawn shop. 342 F. Supp. 3d at 821-22. The plaintiff and his ex-wife resided in Texas; nothing suggested that defendant knew plaintiff would potentially be injured in Illinois when it took dominion and control of paintings in Arizona, or when it attempted to sell certain of paintings at an Illinois auction. Id. at 826. The court ultimately held that, because the alleged conversion took place in Arizona before the Illinois auction, defendant's Illinois activities did not establish personal jurisdiction over defendant for the conversion claims. Id.

In Eli Barzilai, et al., 2022 WL 16856131, plaintiffs sued the Israel Museum for replevin and conversion of an artwork allegedly in their family's possession until the Nazis came to power in Germany. Id. at 1. The plaintiffs sued in New York state court because (i) the painting had been temporarily displayed at the New York Public Library from September 1988 to January 1989, then returned to the Israel Museum; and (ii) the Israel Museum conducts business in New York. Id. at 4. The court determined that defendants were not subject to personal jurisdiction in New York because the Israel Museum's New York business transactions did not have a substantial relationship with their claims for the artwork. Id. at 6.

Attempting to distinguish Barzilai, Plaintiffs argue Defendants' allegedly "tortious possession" of Sunflowers at the Exhibition gave rise to various "torts and crimes".[27] Rsp. p.32, n. 100. And Sompo Japan's possession of Sunflowers in Illinois did not give rise to Plaintiffs' Illinois state law claims of conversion, replevin, trover, or unjust enrichment where Sompo Japan purchased Sunflowers at the Auction in London, not Illinois. Mtn. pp.3; 18-21. Trying to distinguish Graff, Plaintiffs accuse Defendants of being "stuck in a jurisdictional 'time warp'" because Graff predated Ford and was decided upon a "now discredited requirement that conduct

---

[27] Plaintiffs' salacious claim in ¶106 of the FAC – that Defendants committed a list of unspecified, unsupported "crimes" to support the premise that personal jurisdiction exists in Illinois – must be rejected. Rsp. p.32, n. 100. This is a civil case and Plaintiffs have never brought alleged "crimes" as counts. Thus, any resort to baseless accusations of such "crimes" do not support specific jurisdiction over Defendants.

causing the plaintiff's injury occur in the forum State." Rsp. p.32. Plaintiffs are wrong. The *Graff* court determined no suit-related conduct occurred in Illinois; its holding is entirely consistent with the *Ford* and *Bristol-Myers*' holdings.

### 3. Insurance Sales by Non-Parties Do Not "Relate to" Plaintiffs' Claims.

Plaintiffs argue that because Defendants "commercially exploit[ed]" the Painting on their websites to sell insurance in Illinois and engage in insurance marketing at a non-Defendant Sompo Entity's Madison Street, Chicago office, these facts sufficiently relate to their claims to confer specific jurisdiction. Rsp. pp.22, 32. Plaintiffs stretch the "relate to" requirement too far. To satisfy either the "arising out of" or "relate to" tests, Defendants' insurance sales would have to be connected with the controversy that establishes jurisdiction. *Bristol-Myers*, 582 U.S. at 262. No such connection exists between Sompo Japan's purchase of the Painting at Auction (Plaintiffs' so-called "conversion") and another company's Illinois insurance sales. Mtn. pp.25-26. Nor can a Defendant's display of a public domain image on a website serve as the basis for specific jurisdiction over Plaintiffs' commercial exploitation claims. *Id.* Importantly, none of the Sompo Entities directly sell insurance to Illinois consumers in Illinois, facts which remain unrefuted. *See* Mtn. at (Exs. A-E).[28]

Plaintiffs' reliance on *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010) to support their argument that their claims "relate to" a non-defendant's sale of insurance in Illinois is misplaced. Rsp. pp.24-26. *uBID* addressed a trademark infringement claim based on a defendant's product sales through its website to Illinois customers.[29] *Id.* at 423. The court found

---

[28] Plaintiffs rely on *Ptasinska v. U.S. Dept. of State*, 07 C 3795, 2007 WL 3241560 (N.D. Ill. Nov. 1, 2007) to allege the Court must "draw all reasonable inferences" in favor of plaintiffs for motions to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(2). Rsp. p.7. However, the Court must accept as true all unrefuted facts put forth in Defendants' declarations. *Shanahan*, 2020 WL 3058088, at *1 (citing *Northern Grain Marketing*, 743 F.3d at 491; *see also* Mtn. p.6.

[29] Plaintiffs' reliance on *Chicago Transit Auth. Retiree Health Care Tr. v. Dilworth Paxson, LLP*, 19-CV-07570, 2020 WL 6393006 (N.D. Ill. Nov. 2, 2020) is misplaced. In *Chicago Transit*, a dispute arose from

specific jurisdiction existed because plaintiffs' claims derived from defendants' Illinois advertising and sales via the website at issue. *Id.* at 431.[30] Here, *none* of Plaintiffs' replevin, conversion, trover, or unjust enrichment claims derive from Illinois insurance sales.

### C. The Court's Exercise Of Specific Jurisdiction Would Be Unfair.

This Court's exercise of specific jurisdiction over Defendants would violate traditional notions of fair play and substantial justice. Mtn. pp.35-37. Plaintiffs' primary argument to the contrary rests on the fact that Sompo Japan has brought lawsuits in Illinois over contracts that have nothing to do with the issues or Plaintiffs in this case. Rsp. p.34. When the lawsuit has nothing to do with the issues in the current litigation between different parties, courts have refused to find that jurisdiction would be appropriate. *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1025 (N.D. Ill. 2004). Plaintiffs' claims, seeking both the Painting and damages for alleged overseas torts, have nothing to do with unrelated actions between different

---

sale of bonds by defendants. *Id.* at *1. The court found that the allegations were foreseeable where one defendant worked to complete the sale of bonds to an Illinois plaintiff; and one defendant prepared documents intended to facilitate the bond sales to an Illinois plaintiff, and he affirmatively reached out to plaintiff's Chicago bank to ensure that sale was timely. The FAC is devoid of any communications between Plaintiffs and Defendants in Illinois. Similarly, in *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010), cited by Plaintiffs, the court determined that defendant's sales of cigarettes to Illinois residents was a suit-related contact. *Id.* at 759 (state sued cigarette company for violating state and federal law). Plaintiffs' reliance on *In re Syngenta Mass Tort Actions*, 3:16-CV-00255-DRH, 2017 WL 2117728 (S.D. Ill. May 15, 2017) is equally misplaced. There, defendants sold seeds to Illinois plaintiffs in a dispute over whether the genetically modified seeds caused their injuries. The defendants maintained facilities in Illinois to sell their genetically modified corn. *Id.* at *4-5. In contrast, Defendants here do not sell any product in Illinois that relates in any way to Plaintiffs' claims for replevin and conversion for Sompo Japan's purchase of the Painting at the Auction and now displayed in Japan, nor can the commercial exploitation claim confer jurisdiction where the *Sunflowers* image is in the public domain. *Cf. O'Neal v. Bumbo Int'l Tr.*, 16 F. Supp. 3d 952, 958-59 (S.D. Ind. 2014) (jurisdiction existed where defendant sold the defective infant seats in one state and used a distribution network expecting forum consumers to buy them).

[30] Plaintiffs cite to *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312 (3d Cir. 2007) to allege that specific jurisdiction exists, yet that case dealt with the foreign defendant entering a contract with an Illinois resident. Plaintiffs' reliance on *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) fares no better. That case dealt with defamatory statements about an Illinois resident published in Illinois.

parties seeking recovery for subrogation relating to loss paid under an insurance policy. All factors weigh against finding specific jurisdiction over claims relating to the Painting. *See* <u>Mtn.</u> pp.35-37.

### D. Illinois' Long-Arm Statute Does Not Confer Personal Jurisdiction.

Plaintiffs contend that jurisdiction exists under Illinois' long-arm statute yet make no argument in their Response that their claims fall under Sections 209(a)(1) (based on transaction of business) and (a)(4) (insurance contract). Plaintiffs improperly contend that (a)(2) "prescribes jurisdiction arising from or related to the commission of a tortious act in Illinois" (<u>Rsp.</u> p.31), but contrary to Plaintiffs' mischaracterization, (a)(2) does not contain any "relate to" language – the tort must be committed in Illinois. Plaintiffs are also off-base in their assertion that "[p]aragraph 116 of the FAC enumerates the many tortious acts Defendants committed in Illinois by employing the Painting integrally to sell insurance." *Id.* Assuming Plaintiffs meant ¶106, they are off base: ¶106 lists claims never pled nor supported by facts. Unsupported false conclusions of law cannot supplant the need to cite facts to support a tort committed in Illinois. <u>FAC</u> ¶106; <u>Mtn.</u> p.25, n. 12. Consequently, Section 209(a)(2) does not support finding personal jurisdiction over Defendants.

## IV. ALTERNATIVELY, THE DOCTRINE OF FORUM NON CONVENIENS WARRANTS DISMISSAL

### A. Japan Is An Available And Adequate Forum.

Where, as here, an alternative forum is available[31] and adequate, and the balance of private and public interests weigh in favor of dismissal, the Court should dismiss this case pursuant to the doctrine of *forum non conveniens* ("FNC"). <u>Mtn.</u> pp.39-44. Japan is undoubtedly the proper forum for Plaintiffs' claims. Supported by the Declaration of Hon. Hiroyuki Kanno, a retired Justice of the Supreme Court of Japan, Defendants explained Japan is an available and adequate forum for

---

[31] Plaintiffs do not argue Japan is not an <u>available</u> forum. Out of an abundance of caution, Defendants submit herewith, an updated Declaration from Sompo Bermuda stating that it would consent to a Japanese court's jurisdiction should the Court dismiss this case on *forum non conveniens* grounds. *See* <u>Exhibit A</u>.

resolving Plaintiffs' claims. Mtn. Ex. F. Plaintiffs do not dispute that Japanese courts will recognize civil causes of action for return of property and torts, with available remedies, or that Japanese judges have vast investigatory powers, or that Japanese procedures are adequate. *See id.* pp.42-43 (citing, *e.g.*, *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 753–54 (7th Cir. 2008)). Consequently, on each of these grounds, Plaintiffs concede that Japan is an available forum.[32]

Instead, Plaintiffs contend Japan is not an adequate forum because their replevin claim "would be time-barred there" under the doctrine of acquisitive prescription. Rsp. p.42. Plaintiffs suggest that in order for FNC to apply, Defendants must agree to waive that defense under Japanese law, and prove that the waiver would be enforced under Japanese law (*id.*), but these "preconditions" are inappropriate.[33] Conspicuously absent from the FAC are any facts discussing when Plaintiffs discovered their alleged interest in *Sunflowers*. Why does this matter? In *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 736 (7th Cir. 2010), the Seventh Circuit pointed to "an exception…for cases in which a plaintiff seeks to defeat dismissal by waiting until the statute of

---

[32] *See Cincinnati Ins. Co.*, 260 F.3d at 747.

[33] Plaintiffs' FNC cases are inapposite. In *Chang*, the court was "uncertain" whether the product liability claim would be "time-barred if litigated in a Taiwanese court." 599 F.3d at 735. In *Ledesma v. Marriott Int'l, Inc.*, 18-CV-3947, 2021 WL 2953145 (N.D. Ill. July 14, 2021), plaintiff sued for negligence after an elevator suddenly dropped several floors. *Id.* at *1-2. Because the court determined that the single personal injury claim would be time-barred in India, the court denied dismissal on the basis of FNC. *Id.* at *2-3. In *Lyons v. Hyatt Hotels Corp.*, 3:21-CV-126 DRL-MGG, 2021 WL 5015128 (N.D. Ind. Oct. 27, 2021), plaintiff sued for personal injury claims after his golf cart shuttle lost control and struck some boulders in Mexico. *Id.* at *1. Because plaintiff's claims would be time-barred in Mexico, the court found the forum inadequate. *Id.* at *2-3. In *TGI Sys. Corp. v. Jens Giessler & Neumann & Muller GmbH & Co. KG*, 15 C 4341, 2016 WL 878264 (N.D. Ill. Mar. 8, 2016) plaintiff sued defendant for breach of contract. *Id.* at *1. The court denied dismissal based on FNC, in part because defendant only offered a "conclusory statement" that Bahamian courts were adequate and fair (*id.* at *4) and failed to address "whether [plaintiff's] claims would be barred in a Bahamian court by the statute of limitations in that forum." *Id.* However, here, Defendants have gone beyond simple conclusory statements that Japan courts offer and adequate and fair forum – by citing to caselaw supporting this argument in their Motion and providing Hon. Kanno's Declaration, who analyzed why the Japanese court system is adequate and fair. *See* Mtn. p.41-43; Kanno Decl. II.A-B; E. Further, Hon. Kanno addresses the time-bar allegations in his Declaration by explaining that plaintiffs can bring three claims in Japan and that the law of acquisitive prescription is not an automatic bar. (*See* Kanno Decl. V.A.1-3; VI.A).

22

limitations in the alternative forum has expired and then filing suit in his preferred forum (with the longer limitations period) and arguing that the alternative forum is inadequate." Without alleging facts in the FAC as to when Plaintiffs first learned *Sunflowers* was in Mendelssohn-Bartholdy's collection, the assert a mere legal conclusion – their claims are time-barred in Japan because 20 years have elapsed since Sompo Japan acquired *Sunflowers* at the Auction. Rsp. p.43.[34] Applying *Chang*, unless Plaintiffs were ignorant of their claimed interest in *Sunflowers* until after 2007, *Chang* does not help them defeat an FNC dismissal.[35] As Hon. Kanno explained, under a defense of acquisitive prescription, a person that peacefully and openly possesses the property of another for 20 years with an intention to own the property, even if bad faith and negligence is found, acquires ownership. Kanno Dec. at VI.A. However, Hon. Kanno explained that "[t]he Defendants do not acquire ownership automatically upon expiration of the period...." *Id.* Thus, because acquisitive prescription is not automatic, Plaintiffs' argument that one of their claims "would be time-barred" contradicts Hon. Kanno's Declaration.

In his unchallenged Declaration, Hon. Kanno explains why Japan is an available and adequate forum. Mtn. Ex. F. Though Japanese courts have not adopted a case law principle, "precedents have great influence" (Kanno Dec. at II.B.3.); examination of witnesses "are conducted in the same manner as in countries that have adopted a common law system, *i.e.*, by the cross-examination method" (*Id.* at II.B.6.); and parties do not need permission to appeal a judicial

---

[34] Plaintiffs mistakenly state 20 years after 1987 is "2017". Twenty years after 1987 is 2007. Rsp. p.43.
[35] Plaintiffs' argument assumes the HEAR Act (cited repeatedly in the FAC) applies and will resurrect Plaintiffs' state law claims. However, The HEAR Act applies to Nazi-stolen art, not to artwork sold to another individual in France. FAC ¶5. Second, "the HEAR Act does not revive causes of action where the potential claimant knew about a possible cause of action after 1999, could have brought a timely claim, but waited more than six years to bring a claim." *Reif v. Art Inst. of Chicago*, No. 23-CV-2443 (JGK), 2023 WL 8167182, at *5 (S.D.N.Y. Nov. 24, 2023). Again, the HEAR Act does not apply to Plaintiffs' claims and indeed the HEAR Act's exception will not extend expired statutes of limitation to those who knew of the existence of *Sunflowers* in the Decedents' possession and failed to file timely claims.

decision. *Id.* at II.B.11. Also, the judiciary is independent, judges are "bound only by [Japan's] Constitution and the laws" and there is "no explicit or implicit pressure on judges, including those of lower courts, from the government." *Id.* at II.E. As for jurisdiction over this case, Hon. Kanno explained that "there are no circumstances where a Japanese court will refuse to accept the Action on the grounds that it has no international jurisdiction." *Id.* at III.A. Plaintiffs do not challenge any of the aforementioned. Thus, Japan is an available and adequate forum.

**B.      The Private And Public Interest Factors Support Dismissal Under FNC.**

Defendants explained in their Motion why private and public interest factors weigh heavily in favor of dismissal pursuant to FNC. Mtn. pp.41, 43. Plaintiffs fail to challenge Defendants' arguments, just baldly positing Defendants "have not met" their burden.[36] Rsp. p.43, n.131.

Of the private factors, the most significant is the attendance of witnesses (*see GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*, 64 F. Supp. 3d 1179, 1195 (N.D. Ill. 2014)), most of whom (including the key witnesses regarding *Sunflowers*' acquisition) have either died or live in Japan or Europe – certainly not in Illinois. Mtn. p.43. Plaintiffs ignore this and absurdly argue "*most of the events* **giving rise to** the Heirs' claims *occurred in Illinois*." Rsp. p.43, n. 131 (emphasis added). This is at odds with their contention that their claims need only "relate to" Defendants' Illinois activities. Rsp. pp.22-23; 24-26; 29-33. *Sunflowers* was only in Illinois 22 years ago for 3½ months. *See supra* II.A.2. Plaintiffs also contend, without facts, that "all of the evidence" surrounding Defendants' tortious misuse of *Sunflowers* is in Illinois or in the U.S. Rsp. p.43, n. 131. Defendants' Declarations, on the other hand, state "[t]he owner of *Sunflowers* is located in

---

[36] Plaintiffs cite *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805-06 (7th Cir. 2016) to argue defendants carry a "heavy" burden in establishing FNC. However, "when a plaintiff's choice is not his home forum...the presumption in the plaintiff's favor...applies with less force." *Id.* at 806. Here, Plaintiffs are suing far from their homes (Berlin, Munich, and Sweden – FAC ¶¶19-21). Plaintiffs lack grounds to invoke Defendants' "heavy" burden in establishing the doctrine's application here.

Japan" and "[m]ost of the key witnesses to Yasuda's acquisition of the Painting are either deceased or located in Japan, along with any relevant documents." Mtn. p.41 (*see* Sompo Japan Decl., ¶¶3, 9, 11). Finally, Plaintiffs assert Defendants have a "commercial presence in Illinois" and litigate in the U.S. frequently. Rsp. p.43, n. 131. Neither of these "facts" impact the private factors courts use to determine dismissal under FNC. *See* Mtn. p.43. Thus, the private interest factors weigh heavily in favor of Japan as the forum.

As for public interest factors, Japan is the more appropriate forum. Clearly, there is no localized controversy in Illinois: any conversion of *Sunflowers* took place outside of Illinois; Plaintiffs are not Illinois residents; and Defendants are all non-residents. *Id.* Plaintiffs' vague references to the HEAR Act's purpose or the United States' and Illinois' purported "potent governmental interests" in addressing Plaintiffs' claims do not explain how the public interest factors weigh in favor of finding Illinois, as opposed to Japan, is the proper forum. Rsp. p.43, n. 131. Should this Court not dismiss for lack of standing or of specific personal jurisdiction, it should dismiss under the doctrine of *forum non conveniens*.

## CONCLUSION

Defendants respectfully request that this Court grant their Motion to Dismiss.

Respectfully submitted,

Daniel T. Graham (ARDC No. 6203811)
Priscilla Singer (ARDC No. 6307021)
Jeffrey M. Sniadanko (ARDC No. 6331532)
Melissa E. Garcia (ARDC No. 6342000)
CLARK HILL PLC
130 East Randolph Street, Suite 3900
Chicago, Illinois 60601
Telephone: (312) 985-5900
dgraham@clarkhill.com
psinger@clarkhill.com
jsniadanko@clarkhill.com
mgarcia@clarkhill.com

Ronald A. King (N. D. Ill. No. 90784709)
CLARK HILL PLC
215 South Washington Square, Suite 200
Lansing, MI 48933
Telephone: (517) 318-3100
rking@clarkhill.com

**SOMPO HOLDINGS, INC.,**
**SOMPO INTERNATIONAL HOLDINGS,**
**LTD., SOMPO FINE ART**
**FOUNDATION, and**
**SOMPO JAPAN INSURANCE INC.,**
**Defendants**

By:    */s/ Daniel T. Graham*
          One of their Attorneys

26